Shawn Paul Cash
In Pro Se
2071 Amanda Way
Chico Ca, 95928
(530) 815-9314
shawnp.cash@gmail.com

**FILED**

JUL 3 1 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SHAWN PAUL CASH, AN INDIVIDUAL, ON HIS OWN BEHALF**<br><br>**CHARLENE KAY STRANG, AN INDIVIDUAL, ON HER OWN BEHALF**<br><br>**, PLAINTIFFS**<br><br>vs.<br>**NATASHA CHRONISTER INDIVIDUALLY, AND AS AN EMPLOYEE OF BUTTE COUNTY EMPLOYMENT AND SOCIAL SERVICES**<br><br>**NATASHA LABOSKY-FORD INDIVIDUALLY, AND AS AN EMPLOYEE OF BUTTE COUNTY EMPLOYMENT AND SOCIAL SERVICES**<br><br>**ALICIA ESCOBAR INDIVIDUALLY AND AS AN EMPLOYEE OF BUTTE COUNTY DEPARTMENT OF SOCIAL SERVICES**<br><br>**T.J GRUNDY INDIVIDUALLY AND AS AN EMPLOYEE OF BUTTE COUNTY DEPARTMENT OF SOCIAL SERVICES**<br><br>**JAMIE PANUKE INDIVIDUALLY AND AS A SUPERVISOR FOR BUTTE** | **Case No.: Number**<br>2 23-cv-1572 DMC (PS)<br><br>**CASH V BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES.** |

**COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES**

**NANETTE NORTON INDIVIDUALLY, AND AS A PROGRAM MANAGER OF BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES**

**BUTTE COUNTY EMPLOYMENT AND SOCIAL SERVICES**

**LINDSAY STALNAKER INDIVIDUALLY AND AS AN EMPLOYEE OF CHICO POLICE DEPARTMENT**

**DOES 1-10**

**DEFENDANTS**

## I. JURISDICTION AND VENUE

1. This Court has original jurisdiction of the federal claims under 28 U.S.C.A Section 1343 (a)(3) (in that the actions are brought to address deprivation under the color of authority, of rights, privileges, and immunities secured by the United States Constitution). This Court has supplemental jurisdiction of the state law claims under 28 U.S.C. Section 1367

2. Venue is proper in this District pursuant to 28 U.S.C Section 1391(b) because Defendants are located in the Eastern District of California and because the acts and or omissions stated herein occurred in the Eastern District of California

3. Intra-district venue is proper in the Sacramento Division of the Eastern District of California pursuant to E.D Cal L.R. 120(d) because the claims asserted herein arise from acts, or omissions which occurred in the County of Butte.

## II. EXHAUSTION

4. Shawn Paul Cash submitted a timely Governmental Claim to the Butte County Board of Supervisors, who thus Forwarded Plaintiff's Claim to Butte County Administration of Risk Management on January 23, 2023, The County of Butte rejected

the claim in writing on February 10, 2023. Signed by Julia Ogonowski, Risk Manager. Delivered by Certified Mail on February 13, 2023. Shawn Cash has written complaints to Department of Health and Human Services Civil Rights Department, Office of the Attorney General, Council for Judicial review, Director of Butte County Employment, and Social Services, Social Worker Supervisors Jamie Panuke, Supervisor Jesse Lambert along with various attorneys, all of which have gone unanswered, or denied. Plaintiff had detailed every illegal action of Social Workers under their supervision in these letters to no avail.

## III. PARTIES

5. Plaintiff Shawn Paul Cash is a resident of County of Butte, California, Plaintiff brings this action in his individual capacity on behalf of himself.

6. Plaintiff Charlene Kay Strang is a resident of the County of Butte, California, Plaintiff brings this action in her individual capacity, on behalf of herself.

7.Defendant Butte County Department of Employment and Social Services is a "Public Entity" within the definition of California Government Code section 811.2 Butte County Department of Employment and Social Services is being sued in a Monell claim for customs, policies, and failure to supervise their employees, and failure to dissuade their employees from continued civil rights violations.

8. Defendant Natasha Chronister is, and at all times material herein was employed as a Social Worker for Butte County Department of Employment and Social Services, acting within the course, and scope of her employment, under the color of law, Natasha Chronister is sued in both her individual, and official capacities. Nchronister@Buttteecounty.net

9. Defendant Natasha Labosky-Ford is, and at all times material herein was employed as a Social Worker for Butte County Department of Employment, and Social Services, acting within the course, and scope of her employment. Natasha Labosky-Ford is sued in both her individual and official capacities. Nlabosky-Ford@buttecounty.net

10. Defendant Jamie Panuke is and at all times material herein was employed as a Social Worker Supervisor for the Butte County Department of Employment and Social Services, Jamie Panuke is being sued in both her individual, and official capacities as a supervisor. Jpanuke@buttecounty.net

11. Defendant T.J Grundy is, and at all times material herein was employed as a Social Worker Supervisor T.J Grundy is being sued by the plaintiff in both his individual and official capacities.

Tgrundy@buttecounty.net

12. Defendant Alicia Escobar is and at all times material herein was employed as a Social Worker for the Butte County Department of Employment and Social Services. Alicia Escobar is being sued by the Plaintiffs in her individual and official capacities.

Aescobar@buttecounty.net

13. Defendant Lindsay Stalnaker is and at all times material herein was employed as a police deputy for Chico Police Department. Lindsay Stalnaker is being sued both in her individual and official capacities.

Email unknown

14.Defendant Jesse Lambert is and at all times herein was employed as a social worker supervisor at Butte Couty Department of Employment and Social Services, Jesse Lambert is being sued in his individual and official capacities.

JLambert@buttecounty.net

15.Defendant Nanette Norton is and at all times relevant herein was employed as a program manager for Butte County Department of Employment and Social Services. Nanette Norton is being sued in her individual and official capacities.

NNorton@buttecounty.net

16. Plaintiffs do not know the true names and capacities, whether individual, corporate, associate, or otherwise of defendants sued as Does 1 through 25, inclusive, and therefore sues these defendants by such fictitious names pursuant to Civil Code of Procedure section 474. Plaintiffs will seek leave to amend this complaint to allege the true names and capacities of these defendants when ascertained, together with additional charging allegations as necessary. Plaintiffs are informed and believe that each of the fictitious named Defendants is legally responsible in some manner for the occurrences or actions relevant to those occurrences alleged and for Plaintiffs' resulting damages. At all times pertinent hereto each of the defendants was the agent or employee of each of the remaining defendants and has ratified and/or approved the acts of the remaining defendants. At all times material to this complaint, each defendant acted or purported to act under color of the law, customs, and usages of Butte County, and California.

## IV. INTRODUCTION

17. Petitioners Shawn Cash, and Charlene Strang asks the Court to take judicial notice of the fact that they are without counsel, are not schooled in the law, and legal procedures, and are not licensed to practice law. Therefore, this complaint must be read, and construed liberally. Haines v. Kerner 404 US at 520 (1980). Birl v. Estelle, 660 F. 2d

592 (1981) Further Plaintiff believes that this Court has the responsibility and legal duty to protect any and all of Plaintiff's Constitutional, and Statutory Rights. To expedite this case along, and in saving this Court undue time Petitioners respectfully ask the Court to appoint council due to the nature of this case as the plaintiff's are not schooled in Civil Code of Procedure, and Rules of the Court. Plaintiffs have contacted Attorneys Morgan and Morgan, Law offices of Vince Davis, Johnson and Johnson, Shouse Law Group, Her Lawyer among countless others, and were unable to obtain council who felt competent to stand against any Department of Child Protection Services. Therefore, it is requested that this Court appoint council for Plaintiffs to assist them in presenting their case to this court without unnecessary delays.

18. Departments of Children and Social Services all over The United States, including but not limited to Butte County Department of Employment and Social Services, have a long history of detaining people's children without Judicial Authorization, committing perjury in a Court of law to obtain a warrant, detaining children without a warrant, lying in petitions to Superior Courts that ends up severing familial relations, and harming the same children they are supposed to be protecting. As we move along with these matters, the court will see how this agency appears to have no oversight, and ultimately has no regard for the law. There has been no Due Process, no clear and convincing evidence of parental unfitness. There was a severe lack of any physical evidence that could substantiate the removal of Minor E.C., and the warrant obtained for the removal of Minor A.J was based strictly on perjury, and retaliation by and through The Butte County Department of Social Services. These violations are repetitive, without regard for following many aspects of the law. The Defendants have had multiple cases brought against them for the same violations, yet they still continue with the same customs and practices throughout every investigation they pursue. As this case moves forward Plaintiff will show that the detainment of Minor E.C was malicious, illegal, and highly unnecessary. The plaintiff will show how Butte County Department of Employment and Social Services, and their employees have a habit of going above and beyond the scope of their duties in a constant effort to detain children and are destroying American Families lives. These actions are done with a highly skilled staff, and co-conspirators with criminal actions, willfully imperfect performance of the attorneys, and with a lack of required due process of law. Which is repugnant to the United States Constitution, and The Constitution of the State of California.

19. Plaintiff will show how Defendants Natasha Chronister, and Natasha Labosky-Ford, Defendant Alicia Escobar, along with their supervisors, Defendant Supervisor Jamie Panuke, Defendant Supervisor T.J. Grundy, Defendant supervisor Jesse Lambert, and even Defendant Program Manager Nanette Norton together as a group and does 1 through 25, Collectively as Butte County Department of Employment and Social Services,

violated many statutes of California Penal Code, California Welfare and Institutions Code, Civil Rights of the Plaintiff's, protected both by the California Constitution and the United States Constitution.

20. In an attempt to better litigate this matter Plaintiffs invited their Social Worker Defendant Alicia Escobar, her immediate Supervisor Defendant Jesse Lambert, and his immediate Supervisor Program Manager Defendant Nanette Norton, to their home on 4/24/2023 to have a sit-down discussion of everything that has taken place to try to correct the actions regarding the petition. When Plaintiffs were showing her all the paperwork as to Minor E.C being illegally detained Defendant Nanette Norton told Plaintiffs in this recorded conversation that "We can't go backwards, and we can't stop what has happened already, my understanding is that you are filing a lawsuit? That would be the place to bring all that stuff up, right now we are trying to move forward". When Plaintiff Charlene Strang explained to Defendant Natasha Norton that she had a discussion with Defendant Jamie Panuke two days prior, that Mrs. Panuke had informed her that "I don't know anything about your case, and I don't want to know" Plaintiff Charlene Strang asked if it was her signature on the petition, and Detainment report she again stated she wants nothing to do with our case" Defendant Program Manager Nanette Norton explained the following " Chico office, and Oroville office are one super unit, when one worker is unavailable another worker can sign for her, but that does not mean she knows the particulars of the case. She of course had to talk with her supervisor, that report has to go through a plethora of supervisors before she puts her name on it". This process is such a well-rehearsed streamlined process that employees sign their name to take children away from their parents without even reading the paperwork they are signing.

21. Chico Police Officer Defendant Lindsay Stalnaker got dispatched to a call from Defendant Natasha Chronister at Enloe Medical Center to detain Minor E.C. at 2:25 pm on 9/9/2022. She arrived at Enloe Medical Center at 2:36pm, did her investigation as to the detainment, detained Minor E.C. at 2:42pm, and signed the report, and cleared the call back in her car at 2:45 pm. This is such a Streamlined process they can do an investigation in the removal of a child without ever talking to the parents after a safety plan has been put into place an hour and a half earlier and be back in their car with Parents Constitutional Rights in the trash in a matter of 9 minutes and 18 seconds.

22. Minor E.C has been gone for 232 days, Minor A.J has been gone for 179 days.

23. This process has to stop, today. Losing a child is a death sentence for a parent.

24. This action alone shows the court that this is a streamlined process where nobody working under color of law even takes time to read the paperwork. It is all just common practice with Defendants to violate California Statutes, as this action alone

violated 18 U.S.C. 241, and 18 U.S.C. 242, and both parents fourteenth Amendment Right guaranteed to them by the U.S. Constitution.

25) Furthermore, petitioner would like to point out this is action is after Plaintiff Shawn Cash was coerced and threatened under duress into submitting to a drug test, and coerced, and threatened into signing a Voluntary Safety Plan with The Department of Employment and Social Services that he had no part of drafting. (A violation of 18 U.S.C 1915 (2) under the Hobbs Act (1970)).

26) Aforementioned Safety Plan was put into place at 12:30pm on 09/09/2022, Butte County Department of Employment and Social Services thus violated at 2:20pm on 09/09/2022. Defendants then filed a petition in a Court of Law declaring the reason for detention of Minor E.C was due to Plaintiff Shawn Cash's non-cooperation.

27) Defendants then fabricate evidence to support allegations that Plaintiff Shawn Cash was not co-operating with this Butte County Department of Employment and Social Services in a Protective Custody Warrant for his other daughter constantly throughout these cases.

28)Plaintiff will show that on 11/1/2022 upon showing evidence to the court that exigent circumstances did not exist for the detainment of Minor E.C. at 8:30am that Defendant Natasha Labosky-Ford maliciously went before a Court of law that same day after Court and committed perjury to obtain a warrant for Plaintiffs older daughter. With a subsequent Jurisdiction report bearing the signature of T.J Grundy, Social Worker Supervisor authorizing said perjury.

29) The state legislative intent of the Welfare and Institutions Code is to "preserve families and strengthen a child's family ties whenever possible, removing the child only when necessary for his or her welfare". (Section 16000) Dependency proceedings are to be initiated only if required to secure the safety and well-being of the child and are strictly for the safety of the child and not the "punishment of the parent".

30) Defendants abused the power of the Courts when they filed a petition for the "protection" of Minor E.C, and Minor A.J. with knowingly false statements, fabricated evidence, and while withholding exculpatory evidence.

31) Including, but not limited to claiming Mrs. Strang was still using Methamphetamines when they had Mrs. Strang's negative test results back from the lab on 10/28/2022 proving otherwise, and completely fabricating accusations of domestic violence, to further their cause. Butte County Department of Employment and Social Services, and their staff have violated the following Federal, and State laws in this case alone:

| Statute | Name | Maximum Penalty |
|---|---|---|
| 1) Penal Code Section 11165.13(A) made report to law enforcement | | 6 months |
| 2) Penal Code Section 236 False Imprisonment | | 3 years |

| | |
|---|---|
| 3) Penal Code Section 132, Fabrication of Evidence | 3 years |
| 4) Penal Code Section 135 Withholding Exculpatory Evidence | 6 months |
| 5) Penal Code Section 118 Aggravated Perjury | Life |
| 6) 18 USC 241 Conspiracy Against Rights Involving Kidnapping | Life |
| 7) 18 USC 242 Deprivation of Rights Under Color of Law | Life |
| 8) 18 U.S.C 1915 (2) Extortion | 20 years    This |

behavior of the government entities for budget balancing must stop immediately.

## VI.  FACTS RELEVANT TO ALL
## CAUSES OF ACTION

32. At all times relevant herein, all wrongful and unlawful acts described herein were performed under color of state law and/or in concert with or on behalf of those acting under color of state law.

33.This is a civil action seeking compensatory damages, punitive damages, Attorney fees an costs if the Court finds reason to appoint Plaintiff's with said council under the loadstar fees assignment, and Injunctive Relief  in the form of a Temporary Restraining Order, and Preliminary Injunction against Defendants for the commission of acts, under color of state law, that deprived Plaintiffs of rights secured to them by laws of the State of California, Laws of the United States Government, and The Constitutions of the United States. Plaintiff's respectfully request that a Temporary restraining order be placed against Defendants as outlined below in Section VIII Request for Relief

34. Petitioner's Shawn Cash, and Charlene Strang live together in Chico California Charlene Strang the natural mother of minors in these matters. They are not a Legally married couple in the eyes of the State of California but have both swore their vows to the Lord Almighty God of nature, in front of a witness, yet without a Permit, or License from man to do so. Having one daughter at home, hereafter called Minor A.J. that was born to natural mother Charlene Strang, and On December 6, 2022, Plaintiff Shawn Cash was found as presumed father to A.J. in Superior Court of the State of California, County of Butte. They gave birth to a newborn daughter on 09/07/2022, hereafter called Minor E.C. @ 12:34am at Enloe Medical Center in Chico California. Upon Delivery Mrs. Strang admitted to hospital staff that she had consumed 2 hits of methamphetamines 2 days prior, as a one-time use to relieve her ADHD anxiety attack. (Formerly prescribed Adderall yet quit taking it while pregnant).

35. E.C. was born a Healthy, Asymptomatic (without symptoms) baby girl with no physical harm done by aforementioned consumption. (See Exhibit A "09/07/2022 Admission (Discharged) in WELL BABY NURSERY" Enloe Medical Center Record # MRN 1112888 Page #6 Diagnosis)

36. E.C. toxicology report from Enloe Medical Center showed presumed positive for Methamphetamine, and Amphetamine metabolites in her urine, although levels were below threshold for confirmatory test. (See Exhibit A "09/07/2022 Admission (Discharged) in WELL BABY NURSERY" Enloe Medical Center Record #1112888 Page 19)

37. On 09/07/2023 @ 0653 Enloe Medical Center employee Susan Calvert R.N. entered mothers' hospital room, at around 0653 am, and cut E.C. umbilical Cord for a second time, This procedure was Ordered by Amy Dolinar, Md. Umbilical Cord Sample 22-E-250O0001, and 22A-251SO001 was taken from E.C. 6 hours after birth for the purpose of obtaining a confirmatory toxicology report for the Butte County Department of Employment and Social Services (see Exhibit A "09/07/2022 Admission (Discharged) in WELL BABY NURSERY" Enloe Medical Center Record #1112888. Page 11.) This extra cutting on E.C. was done without parents' knowledge, and/or permission at the time of occurrence.

38. Umbilical cord Sample # 22-A-25SO001 was subsequently shipped to ARUP Laboratories, in Salt Lake City Utah. ARUP Laboratories is a CLIA laboratory, that developed umbilical cord testing, and has not been cleared, or approved by the F.D.A. Disclaimer at the end of toxicology report states in part: "Detection of drugs in umbilical cord tissue does not insinuate impairment and may not affect outcomes for the infant". It also states: "This test was performed in a CLIA certified Laboratory and is intended for clinical purposes only". (See Exhibit A" 09/07/2022 Admission (Discharged) in WELL BABY NURSERY" Enloe Medical Report #1112888, Pages 11 through 13)

39. On 09/08/2022 Discharge summary by Alicia Wenberg MD at 9:05 am states Mrs. Strang admission date as 09/06/22, and discharge date as 9/8/22. Plaintiff Charlene Strang was discharged with baby on 09/08/22 at 9:05am. Due to Butte County Department of Employment and Social Services involvement Plaintiff Mrs. Strang was detained against her will, along with Minor E.C for the next 30 hours until Defendant Natasha Chronister could detain Minor E.C. (A violation of Penal Code Section 236(d).This Hospital hold ordered by Natasha Chronister after ordered to be discharged is by all sense of the word legally a detainment of Minor E.C. and Plaintiff Charlene Strang.

40. 09/08/2022. Clinical Support note by Melissa Struyf, MSW at 09/08/2022 @ 1703 pm states the following: 9/8/22 SW following due to CSD involvement- see previous SW notes. Received a call from CSD. Natasha advised she is at EMC to meet with Pt. Received a call from Natasha advised she is to do a home visit to meet FOB and is working on a protective custody warrant and will provide an update when she can. Disposition is undetermined. Awaiting call from CSD. Updated MD/RN. SW to follow MS, MSWI (See Exhibit C "mychartenloe.org/1703")

41. On 09/09/2022 @ 0947 Minor E.C. was ordered to be discharged a second time, with doctor's orders stating that Minor E.C was to be discharged home with parents,

physician in 2-4 days, return to clinic immediately for temp greater than 100.4 rectally in the first 2 months of life. Signed on 09/09/2022 @ 0947am. (See Exhibit A "09/07/2022 Admissions (Discharged) in WELL BABY NURSERY" Enloe Medical Record#1112888 page 6) (Another violation of Penal Code Section 236(d). another detainment after being ordered released by M.D.

42. On 09/08/2022 they contacted Plaintiff Shawn Cash, to set up an in-home visit to assess the home. A visit was scheduled for 09/09/2022 @ 0930am. On 9/8/2022 Butte County Department of Employment, and Social Services contacted Plaintiff Charlene Kay Strang who reported to them that her use was a one-time occurrence, and that her use was not at home, or around her older daughter Minor A.J. She also informed them that father, (Plaintiff Shawn Cash) did not know about her use until during delivery, when she told the doctor, and they had not had a chance to discuss it yet, but to please take it easy on him. That he is a good man. Mrs. Strang also requested that they go to the house and meet Mr. Cash, and see her family, and home.

43. Enloe Medical Center Discharge Report was signed by Dr Tai Pham M.D on 09/09/2022 at 0947am. This report states Medical Social Worker Vanessa Corral was notified as to the mother's substance use, Mrs. Corral then notified Butte County Department of Employment, and Social Services, Mrs. Corral states in her report signed on 09/09/2022 at 0947am that Defendants CPS decided to detain the baby. That decision was already made, and Enloe Hospital was notified before Natasha Chronister, and Natasha Labosky-Ford came to the home of Plaintiff Shawn Cash. (See Exhibit A "Admissions (Discharged) in WELL BABY NURSERY" Enloe Medical Center #1112888 page 6)

44. On 9/9/2022 Plaintiff Shawn Cash, and Minor AJ were at the home waiting for the arrival of County Social Workers to come do an inspection of the home and release his daughter. As a non-offending parent, with no drug history for the last 20 years, he saw no issues with his daughter being released into the care, custody, and control of her father.

45. At approximately 0915 Natasha Chronister, and Natasha Labosky-Ford both arrived at the home of Shawn Cash, Charlene Strang, Minor E.C, and 18-month-old Minor A.J. as scheduled. They observed (as testified to in Superior Court of California, County of Butte Case 22DP00213, Case 22DP00215 on 11/15/2022, 12/6/2022, and 12/8/2022) a cluttered, yet clean home from parents doing storage wars, 2 age appropriate beds for both the girls, no drugs, no paraphernalia, no signs of drug use, no abuse, no signs of abuse, no signs of neglect, the 18 month old child Minor A.J. home with Plaintiff Shawn Cash at the time, and they observed that the child exhibited no signs of abuse, when asked to describe their observation of the girls room both Defendants Mrs. Chronister, and Mrs. Labosky-Ford testified that they had lots of toys, that the home had

all necessary provisions in expectation of baby's arrival, with the exception to formula as the hospital staff would not allow mother to breast feed Minor E.C. Upon going outside, they were shown a family car, which was registered, insured, with 2 age-appropriate car seats. They inquired whether Shawn Cash knew of Charlene's use which he responded that "He found out during delivery, and that he assumed that she used in Cherokee, or Cohasset, or a town beginning with a C where she went to go see friends, although he could not think of the name at the present time. They inquired of Plaitiff Shawn Cash's drug use, which he informed them "He had used 19 years prior yet had been clean since his son passed away March 2001.

46. Natasha Chronister, and Natasha Labosky-Ford informed Shawn Cash that E.C. could not be released from Enloe Medical Center into his care unless he went to Butte County Probation that day and submitted to a urine toxicology screening to prove he was a fit father. Shawn Cash agreed against his better judgement as they were performing their duties under the color of law, and under the threat of his daughter, Natasha Chronister then produced a slip of paper directing him to test between the Hours of 0900, and 1200, or between the hours of 1300 and 1600 that day. Plaintiff Shawn Cash agreed. The social workers then left. This action was overseen by Defendant Supervisor Jamie Panuke.

47. Social Workers Natasha Chronister, and Natasha Labosky-Ford then returned to the home of Plaintiff Shawn Cash at around 12:30pm, and informed Plaintiff Shawn Cash that Minor E.C. would not be able to be released from Enloe Medical Center into his care unless he signed a "Voluntary Case Agreement" the Butte County Department of Employment and Social Services had drawn up without any input from Plaintiff Shawn Cash, which they had in their possession prewritten. Shawn Cash signed this document, as the Social Workers were performing their duties under color of law Shawn Cash signed the agreement against his better judgement under threat or coercion during a time of stress, threatened by the care, custody, and control off his daughter. Jurisdiction Report in filed in Butte County Superior Court case #22DP00213 on 10/19/2022 page 21 states in part the following: "Butte County Children's Services Social Worker Natasha Chronister if called to testify (pg. 22) would state that on September 9, 2022, she attempted to develop a "Voluntary Case Agreement with Mr. Cash". It goes on to state: Mr. Cash signed the "Voluntary Case Agreement which stated the following: Mr. Cash and Mrs. Strang agree to drug test as requested, failure to appear for a drug test is considered a positive. Mrs. Strang will participate in substance dependency services, and participate in an alcohol and drug assessment, Mrs. Strang will follow through with any recommended services. Mr. Cash will adequately protect the children and will not leave the children with Mrs. Strang if he believes she is under the influence and will not allow Mrs. Strang to take the children to Cohasset where she allegedly uses methamphetamines. Mr. Cash and Mrs.

Strang will follow through with all medical appointments for both AJ and EC." "Social worker would state on September 9, 2022, at approximately 12:00pm Mr. Cash had not appeared for drug testing" "Social Worker Chronister would state that she followed up with Mr. Cash, at which time he signed the "Voluntary Case Agreement" "Social Worker Chronister would testify that on September 9, 2022 as of approximately 2:20 pm Mr. Cash had failed to drug test as requested." "Due to Mr. Cash's failure to comply with the Voluntary Case Agreement Social Worker Chronister contacted Chico Police Dispatch and requested to have an officer respond". *Jurisdiction Report Butte Superior Court case # 22DP00213.* Plaintiff believes that Social Workers "Request" to drug test was not a "Request" at all, but a "Demand" in which she threatened and followed through with the kidnapping of his daughter without a warrant, and without exigent circumstances.

48. Supreme Court states "We find it intolerable that one Constitutional Right should have to be surrendered in order to assert another." *Simons v United States*, 390 U.S. 389 These options that the Social Workers were asserting was Shawn Cash could only keep his Fundamental Fourteenth Amendment Constitutional Right to the care, custody, and control of his daughter if, and only if Shawn Cash was willing to waive his Fourth Amendment Right to be free from unreasonable search and seizure. Plaintiff Shawn Cash is a non-offending natural parent of Minor E.C, who was willing, able, and requesting immediate care of his child.

49. Natasha Chronister, and Natasha Labosky-Ford returned to Shawn Cash's home for a third time at around 2:00pm on 09/09/2023. They found Shawn Cash not to be home as he was dropping off his 18-month-old at the babysitters, as children are not allowed at the testing site. Natasha Chronister left Shawn Cash a note in his door stating in part that she had seen no follow through on his part, which would result in the detainment of his child.

50. On 09/09/2022 Natasha Chronister, and Natasha Labosky-Ford then drove to Enloe Medical Center where they called Chico Police Department to have an officer respond to Enloe Medical Center for the purpose of detaining Minor E.C., and giving temporary custody to the Butte County Department of Employment and Social Services Social Workers did this with malice, and forethought, without a warrant, without probable cause, and without exigent circumstances, as the child was Ordered by a doctor at 0947 that morning to be released with her parents, from Enloe Medical Center, and Social Worker Chronister, under color of law informed Enloe Medical Center to hold Charlene Strang, and Minor E.C. from 9/8/2022 @ 9:30am until 9/9/2022 @ 2:20pm when Mrs. Chronister was available to detain Minor E.C. Resulting in Minor E.C. , and Plaintiff Charlene Strang being detained against their will for a total of almost 30 hours, and deprivation to both Plaintiff, and his daughter's familial bonding, which is well recognized by the State, and Federal Governments to be of extreme importance in

violation of Penal Code 11165.13, Welfare and Institution Code section 302, section 306(a)(2), Penal Code 236(d), United States Constitution Amendment 14, U.S. Constitution Amendment 4,) not because they had to but because they could. These actions were overseen by Supervisor Jamie Panuke, and Department of Employment and Social Services

51. Defendant Lindsay Stalnaker, a Deputy with Chico Police Department, arrived around 2:35pm, obtained the toxicology report from Defendant Natasha Chronister, and Seized E.C. with no Judicial Authorization, in the absence of exigent circumstances, and without performing an independent investigation. Detaining Minor E.C. at 2:42pm, a total of 6 minutes after getting to Enloe Medical Center. Deputy Stalnaker was done with the call at around 2:46pm. The Jurisdiction Report would state "Officer Lindsay Stalnaker would state that the social worker showed her the Voluntary Case Agreement and informed her that as of 2:20pm, Mr. Cash had failed to appear for drug testing. Officer Stalnaker would testify that with the information available she completed a Report of Detention Pursuant to Welfare and Institutions Code 305. *Petition, and Jurisdiction Report Superior Court for the State of California, County of Butte Case # 22DP00213*

52. On 09/13/2022 Defendants Natasha Chronister, and Natasha Labosky-Ford then filed a subsequent petition with Butte County Superior Court alleging that they had to warrantlessly detain Minor E.C. under W&I code 305's exigent circumstances clause due to "Mr. Cash's failure to comply with the Voluntary Case Agreement". When cross examined on the stand, Defendant Natasha Chronister was asked by Plaintiff Shawn Cash "Why did you tell me that I had to test between 1:00pm, and 4:00pm, and then detain the baby at 2:20pm?" To which Defendant Natasha Chronister testified "I had to detain at 2:20pm because mom and baby were being released." In a subsequent Updated Case Plan filed with the Superior Court on 11/7/2022 it states in part "Father was asked to drug test- he would not cooperate with the Social Workers after multiple conversations and in home visits, this lack of follow through resulted in the social workers inability to assess his ability to adequately care the child." This statement from Defendant Natasha Labosky-Ford goes to show that she did not detain Plaintiff's child due to him abusing his child. She detained the child due to Plaintiff Shawn Cash failing to do the Butte County of Employment and Social Services "Requests" without a court order ordering him to do so. At the time of her kidnapping minor E.C.'s health was hearty, and robust, and she needed no medical consultation, as she was ordered home with her parents 30 hours earlier and held. This statement clearly shows that Plaintiff Shawn Cash did not in any way harm his child yet did not take on the Butte County Department of Employment and Social Services burden of proof showing him unfit. Plaintiff Shawn Cash did not believe the Department of Employment and Social Services had the unlimited power at that time to permanently remove his child from his care with absolutely no showing of being a perpetrator of child

abuse, or any other statute of Law. These actions were overseen by Supervisor Jamie Panuke, and Department of Employment and Social Services.

53. On 09/13/2022 Defendants Natasha Chronister, and Natasha Labosky-Ford filed a petition with the Butte County Superior Court that had statements, and allegations known to be untrue at the time. These allegations include the following: "Shawn Cash knew of mothers use, and did nothing to dissuade her from further use," Knowing that both parents reported that Shawn found out during the birth of his daughter. In the petition to the Courts Defendant Chronister States That both parents have an ongoing, untreated substance abuse issue that hinders their ability to provide protection, safety, and care to the child.  Social Workers included this in a petition to the Superior Court of the State of California knowing that this statement was false, this statement directly contributed to the injuries of the Plaintiff.  They also enclosed in the petition, and the Jurisdiction Report that "Shawn Cash has an untreated Substance abuse issue that hinders his ability to provide care, safety, and protection, to his child." Knowing at the time that this statement was false, yet it further advanced their cause in the kidnapping of Minor E.C. These statements are knowingly erroneous statements to the Courts and directly contributed to the further confinement of his newborn, and physical, emotional, financial injuries. These actions were overseen by Supervisor Defendant Jamie Panuke, and Defendant Department of Employment and Social Services.

54. Defendant Shawn Cash Text Defendant Natasha Chronister at 2:25pm and informed Mrs. Chronister that he wanted a copy of the warrant. Defendant Chronister replied to his text with You have a Detainment Hearing on 09/13/2022 at one court street Oroville Ca at 8:30 am. You will receive your paperwork there. Defendant Social Workers made no contact with Plaintiff Shawn Cash from 2:25pm on 09/09/2022 until Tuesday 09/13/2022 nor was he given any direction, or access to information regarding the matter from anyone. This text message was the only notice of a Detention Hearing, or copy of the warrant, or petition Plaintiff Shawn Cash ever received. Plaintiff's Shawn Cash, and Charlene Strang never received their visit with Minor E.C within 5 hours of detainment as required by law.  At the detainment hearing Mr. Cash was brought into court, asked about his Family Tree, asked about Indian Heritage, given an attorney, and given a recess to be able to talk to his attorney. He was told by his attorney that he had a right to a contested hearing, although council did not want to do a contested hearing due to his vacation plans. Mr. cash argued and asked his attorney to file a Motion to Dismiss due to the Social Workers having no evidence against him, and the illegal kidnapping of his daughter after he signed a safety plan. Council returned to the courtroom, and submitted to the complaint, on the way out of the courtroom the proceeding Judge ordered Mr. Cash to go to the probation Department and submit to a drug test forthwith. Plaintiff argues the Proceeding judge did not have Jurisdiction over the case at this time and abused her

discretion in making such an order. The first time Mr. Cash was offered a visit with his daughter was by Defendant Alicia Escobar on Jan 4, 2022, if, and only if he would go to Butte County Probation Department and waive his Fourth Amendment right to be free from unreasonable search, and seizure, and his right to expected privacy in allowing another man to inspect his naked body before submitting to investigation of his bodily fluids. At this time the case turned from Mrs. Strang used while pregnant to Mr. Cash refuses to comply. These actions were overseen by Supervisor Defendant Jamie Panuke, and Butte County Department of Employment and Social Services.

55. Defendants Natasha Chronister, and Natasha Labosky-Ford, or nobody from the Department of Employment and Social Services made any contact whatsoever with Plaintiffs Shawn Cash, from the text conversation during detainment until 09/13/2022 regarding the condition, or whereabouts of his newborn daughter. Social Worker Labosky-Ford, and Social Worker Alicia Escobar came by the house on October 12, 2022, and spoke with Mrs. Strang, Mr. Cash was on a conference call at the time for a homeless project he was putting together. A project that subsequently went into the trash after losing his daughter Social Workers told Mrs. Strang that Mr. Cash had failed a drug test, and if Minor AJ was going to be in the home, then Mr. Cash could not, then they inquired as to how Mrs. Strang was going to keep minor AJ safe from Mr. Cash. Forcing Mrs. Strang to kick Mr. Cash out of the house with nowhere to live for 15 days in 30-degree temperatures, so that they would not follow through with the threatened detention of minor AJ. On 10/18/2022 Mrs. Strang contacted Social Worker Alicia Escobar to advise her of Mrs. Strang's new phone number as Mrs. Strang had a conversation about the allegations, and requirements of the Butte County Department of Employment, and Social Services, and that Mr. Cash had gotten upset, broke his phone, and left the house. No follow up was ever done on this conversation until 11/1/2022 when it was listed in a protective custody order as "Domestic Violence in front of the minor AJ. When in Fact Minor AJ was at a friend's house for a playdate at the time so the parents could have a sit-down discussion. These lacks of actions were overseen by Supervisor Defendant T.J. Grundy, and Butte County Department of Employment and Social Services.

56. On 11/1/2022 at or around 0830 Plaintiff Shawn Cash submitted an objection to the erroneous report of Social Worker Natasha Chronister before the Butte County Superior Court. This report outlined the fact that the Department of Employment and Social Services detained E.C. without a warrant, claiming exigent circumstances, yet left the Plaintiffs 22-month-old in the home. This report laid out in plain facts the illegal kidnapping of Minor E.C.

57. On 11/1/2022 at or around 1000 Defendant Natasha Labosky-Ford swore under Oath or affirmation to Superior Court of the State of California, County of Butte case #22DP00215 the fact that Charlene Strang, continues her methamphetamine use. The Department of Employment and Social Services had requested Charlene Strang to drug test on 9/13/2022, 10/11/2022, 10/14/2022, 10/18/2022, 10/26/2022, and 10/27/2022. All of those tests were sent to Redwood Toxicology Laboratory for analyzation. The results of all of those tests were returned to Butte County Department of Employment and Social Services on or before 10/28/2022. The results of all of those tests confirmed by the lab were negative for any traces of methamphetamine, and amphetamine, along with any other illegal substance. These actions were overseen by Supervisor Defendant T.J. Grundy, and Butte County Department of Employment and Social Services.


58. On 11/1/2022 after Plaintiff Shawn Cash objected to aforementioned report, Defendant Natasha Labosky-Ford swore under Oath or affirmation before a judge of the Superior Court of the State of California, County of Butte, that Plaintiff Shawn Cash, and Charlene Strang committed acts of domestic violence in front of Minor A.J. Defendant Natasha Labosky-Ford knew at the time that this statement was false. Defendant Labosky-Ford made this statement for the purpose of obtaining a Protective custody warrant for Minor A.J. to cover mistakes made previously by her as an employee of the Butte County Department of Employment and Social Services. On 11/03/2022 Defendant Natasha Labosky-Ford detained Minor A.J. with aforementioned warrant. Minor E.C. and Minor A.J. are still in the temporary custody of the Butte County Department of Employment and Social Services as of the time of this writing. Plaintiff Shawn Cash has not seen his daughter Minor E.C for 244 days, Plaintiff Shawn Cash has not seen his daughter Minor A.J for 179 days. These actions were overseen by Supervisor Defendant T.J. Grundy, and Butte County Department of Social Services.


59. Defendant Alicia Escobar testified at AJ's Jurisdictional hearing on 11/15/2022 that she was unaware if Minor A.J. was at the home at the time of the alleged domestic violence, and when asked why she reported "Domestic Violence" to Defendant Labosky-Ford she stated that she never called it Domestic Violence.


60. In the Protective Custody Warrant dated November 1, 2022, Authored by Defendant Natasha Labosky-Ford, and signed by Defendant Labosky-Ford, and T.J Grundy Social Worker Supervisor it states that "The child's mother has an ongoing,

untreated substance abuse issue that impacts her ability to provide protection, Supervision, and regular care to the child. Since the removal of the half sibling the mother has continued her methamphetamine use. Social Workers knew at the time this statement was false. This statement directly impacted the illegal removal of Minor A.J from the care, custody, and control of her natural parents, and the continued detainment of Minor A.J. with nothing but Completely Fabricated Evidence.

61. The Department of Employment and Social Services already had the negative results of mother's drug toxicology reports returned from Redwood Toxicology on October 28, 2022. The aforementioned statement to obtain a warrant for A.J. was knowingly false at the time it was stated.

62. The Butte County Department of Employment and Social Services employees Jamie Panuke, and T.J. Grundy oversaw all the aforementioned actions of both Social Workers Natasha Chronister, and Natasha Labosky-Ford at all times relevant to the aforementioned facts. Supervisor Jesse Lambert took over the case in January, was informed of said actions, and violations, and yet still did nothing to protect the Civil Rights of the parents, or any disciplinary actions to aforementioned Social Workers.

63. Butte County Department of Employment and Social Services oversaw each and every action as a whole that their employees were doing during these acts and did nothing to negate their employee's illegal activities.

64. The Department of Employment and Social Services was aware at all times of the perjury, and false statements their employees were making to the courts, and at no time dissuaded their employees from perjuring themselves before a court, nor did they enforce any additional corrective measures to address their employees about the department policies, the laws of the State of California, or the rights guaranteed to parents under the Constitution of The United States. This lack of action authorizes the Butte County Department of Employment and Social Services to be just as liable in the injuries to the plaintiffs as their subordinate counterparts under a Monell claim.  This lack of corrective action should stand against any qualified immunity defense.

65. Defendant Natasha Labosky-Ford wrote an email to Plaintiff Shawn Cash on November 4 Requesting "Please drug test today. Form Attached. Please contact myself or your primary social worker Alicia Escobar." Signed Natasha Labosky-Ford. Plaintiff Shawn Cash responded on 11/7/2022 two full months after E.C. detainment with the following: "I would like it noted that as of today I have not received a warrant, a petition, a detainment report, offered any visitation, or other services by your department. The only contact I have received from your department is slips requesting I go provide a urine sample for you, waiving my Fourth Amendment Right to the seizure of my bodily fluids. You can contact me to demand a drug test, but not to offer me a visit with my daughter? It has been 2 months today since I have been able to see her, and still the only contact I

receive from you is demanding further violations of my Constitutionally Protected Rights? Thank you for your time and consideration. (See exhibit D attached) This Email has gone ignored to this day.

66. Butte County Department of Employment and Social Services Social Worker Alicia Escobar contacted Defendant Shawn Cash on December 8, 2022, to offer him his first visit with his children. As long as he came into the office, and started doing their services, and drug testing. The department, and Social Worker Alicia Escobar filed for Plaintiff to be bypassed for Family Reunification Services on December 8, 2022 Disposition Hearing in case 22DP00213, regarding Minor E.C. and January 24, 2023, in case 22DP215 regarding A.J. This action was just to taunt Plaintiff Shawn Cash as the Courts had just bypassed him for Family Reunification at their advisement.

67. In a Request for protective custody warrant authored by Natasha Labosky-Ford and overseen by T.J Grundy Dated 11/2/2022 Natasha Labosky-Ford included Allegations that Plaintiff Charlene Strang has an ongoing untreated substance abuse issue that hinders her ability to provide protection, safety, and care to the child, Since the removal of Minor E.C mother has continued her methamphetamine use. It also states that Mrs. Strang continues to deny her positive drug tests continuing to claim they were all false positives. Then in Jurisdiction Report dated 12/6/2022 shows a list of 9 continuous clean drug screens, with zero positives, then in the Disposition Report Dated1/4/2023 states that Mrs. Strang has multiple presumptive positive tests and while confirmation of the tests return negative Mrs. Strang displays erratic behavior again while later listing 13 clean tests.  Stating it would be detrimental to the children to live with their mother due to her substance abuse. These perjured reports were signed by Defendants Natasha Labosky-Ford, Defendant T.J. Grundy, and Defendant Supervisor Melody Giles.

68. Defendant Natasha Chronister, and Natasha Labosky-Ford removed Plaintiff's children by Fabricating evidence that Plaintiff Shawn Cash knew about Plaintiff Strang's use, and Plaintiffs having an ongoing untreated substance abuse issue, therefore without exigent circumstances, or a warrant, thus kidnapping Minor E.C. Then when Plaintiff pointed those facts out to the courts Defendant Labosky-Ford Fabricated more evidence to remove his other child which is again kidnapping. The Butte County Department of Employment and Social Services kidnapped both of Plaintiff's children without enough evidence to place him in jail for even 48 hours. Yet have enough fabricated evidence to permanently remove his children for the rest of his life.

69. The Constitution of The United States of America guarantees each citizen the right to due process of law. The Butte County Department of Employment and Social Services is not above that Constitution, or above the laws of The State of California.

70. The Butte County Department of Employment and Social Services, its employees, and staff has failed this family in the most egregious of ways. Not allowing

newborn bonding, breastfeeding, family relationships, that are held in the upmost
importance by our everyday way of life.

## VII.  INTRODUCTORY ALLEGATIONS

All allegations refer to the Welfare and Institutions Code unless otherwise
noted.

Plaintiffs incorporate by this reference Paragraphs 15 through Paragraph 30
Memorandum of Law, and paragraphs 31 through 70 Facts relevant to all causes of action
as if fully set forth herein.

71. Defendants came to the home of Mr. Cash and threatened him at a time of
duress after just having a baby and finding out the mother had used illegal substances
while pregnant and demanded that he waive his Fourth Amendment Right to be free from
unreasonable Search and Seizure, or they would Violate his Fourteenth Amendment Right
to the care, custody, and control of his daughter. A threat they followed through on and a
violation of his Fourth Amendment Right guaranteed by the Constitution of the United
States.

72. Defendants did not properly, and lawfully release Plaintiff's daughter into his
custody, care, and control when initial petition was not timely filed (pursuant to W&I
section 313) or when the Detention hearing was not timely held (pursuant to W&I section
315)

73. Defendants barred all entitled contact between Plaintiff Shawn Cash, and his
daughter (pursuant to W&I section308(a)(2)) with no claim of detriment to the child,
therefore denying Plaintiff's fundamental Liberty Interest in the soothing, and reassuring
of his newborn child, and denying minors E.C and AJ of essential elemental, and
recuperative comfort from their natural parent.

74. Defendants put both minor children of plaintiffs at risk when they placed them
in the foster care of strangers, both children were repetitively sick while in the care of the
defendants. Coming to one visit with mother lethargic, and a temp of almost 100 degrees,
with the foster mother proclaiming, "I don't know what's wrong, I laid her down for a
nap at 11:00 and she just woke up like this, I can come get her early if you need me too,
but I have somebody I have to meet at Starbucks right now. Plaintiff Charlene Strang
requested Defendant Jamie Panuke to dial 911 for Minor A.J., and Mrs. Panuke refused,
and as supervisor demanded that 4 other social workers in the office not to call either.
Visit with Plaintiff was cancelled on 4/6/2023 due to both children having pin eye so bad
their eyes were sealed shut. (See exhibit E Visit to Prompt care. The doctor's notes state
"Mom" (Foster mother) reported she received a note home from daycare that a child
there had pink eye the day prior.

75. Original petition, and subsequent reports were made up of almost entirely conclusory statements, having no basis in fact, and wholly fabricated allegations. Each one of these allegations listed above was known to be false.

76. In spite of the Defendants claims of risk and danger the Defendants claimed in the petition. They testified to the Facts opposite of their claims in a court of Law on 11/1/2022, 12/06/2022, and 12/08/2022.

77. Defendants never presented a specific instance of abuse, or neglect that Plaintiff Shawn Cash placed his child at risk of, or harm he did to his child. Plaintiff Shawn Cash was at all times a non-offending parent. Penal Code 11165.13 states a report should not be made for a mother testing positive "without more" and if there is a danger to the child a report should be made to social workers only, and "not to law enforcement". Law enforcement is the only one with the power to detain a child, therefore the law reads do not detain.

78. Defendants failed to proceed in accordance with the Welfare and Institutions code by:

A) Refusing to conduct any real investigation into the situation, by giving Plaintiff time to test in accordance with the agreement signed at 12:30 and detaining at 2:20 knowing he has an 18-month-old at home the babysitter had just had for 12+ hours while parents were at the hospital giving birth to their newborn.

B) Negating possible scenarios that could facilitate keeping the family unit together and keeping Plaintiffs daughter in the safety and comfort of their own home with their loving parents (pursuant to W&I section 306(b), section 309(d), and section 309(d)(1)).

C) Failing to inform the Plaintiff Mr. Cash of anything related to the case, including the minor's status, or how they were doing, (pursuant to W&I section 307.4(a), 307.4(a)(1)).

D) Summarily Seizing minor E.C. unlawfully limiting the time Plaintiff had to discover his options before the initial hearing, not properly filing a petition in the matter of minor E.C. (pursuant to section 311(a)) giving Plaintiff Shawn Cash almost no time to educate himself on dependency proceedings.

E) Not timely serving Plaintiff Shawn Cash with a notice of detention hearing with the required copy of the petition (pursuant to W&I section 290.2)

F) Not disclosing the rights of Plaintiff Shawn Cash (pursuant to W&I code 307.4, section 311, section 319, and section 341.)

79. Each of these actions taken individually were unlawful, unconstitutional, and unnecessarily punitive on their own. However, their actions- taken as a series of steps in an overall plan- demonstrated a considered punitive strategy towards Plaintiff's that proved more damaging in anthology than the sum of Defendants cumulative acts.

Defendants, and each one of them executed this conduct in opposition to their mission statement, the legislative intent of the W&I Code, and the well-established Constitutional Rights and Liberty Interests of Plaintiff's Shawn Cash, and Charlene Strang.

80. Collectively the facts corroborate Plaintiffs claim of intentional, planned, separation of Plaintiff's and their daughters, and the prolonged unnecessary dependency of the children. Further considering the total Damages Defendants purported in the handling of this family, one can only say the children's health, welfare, or best interest was without importance in regard to justice, to say this is "in the best interest" is complete fiction.

81. Defendants complex deceptions and heavy-handed malevolent manipulations made by Defendants, and their set of attorneys are the only contributors of evidence and argument at the subsequent hearings, Thus Defendants and each one of them were completely unopposed by the unprepared, uninformed, and vulnerable Plaintiff by deliberate design, all well-orchestrated, and all too often rehearsed tactical steps to legal kidnapping. The department at all times controlled all information coming to the courts.

## VIII. CAUSES OF ACTION

The Plaintiffs bring their claims under the Federal statute, 42 U.S.C 1983 which provides that any person or persons who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or Laws of the United States shall be liable to the injured party.

## FIRST CAUSE OF ACTION.

(For deprivation of Plaintiff Charlene Strang Fourth Amendment Right guaranteed by the United States Constitution against Natasha Chronister, and Natasha Labosky-Ford in their individual, and official capacities). (Jury instructions 9.3, 9.20, 9.33B)

82. Plaintiffs re-allege and incorporate by this reference each and every allegation of paragraphs 1 through paragraph 81 above as if fully set forth herein.

83. On 09/08/2022 Defendants Natasha Chronister, and Natasha Labosky-Ford acting under color of state law did knowingly and willfully deprive Plaintiff Charlene Strang of her Fourth Amendment Right to be free from unreasonable search and seizure when they seized her and held her against her will for 30 hours while Natasha Chronister tried to obtain a warrant. Plaintiff Charlene Strang was harmed by the conduct of Defendants as enumerated above, and that conduct was a major factor in causing physical, emotional, and economic injuries to Plaintiff Charlene Strang, in amounts to be proven at trial, and justifying punitive damages as to individual defendants,

## SECOND CAUSE OF ACTION

(For deprivation of Plaintiff Charlene Strang's Fourth Amendment Right guaranteed to her by the United States Constitution, against Supervisor Jamie Panuke in her individual, and official capacities.) (Jury instruction 9.4, 9.20, 9.33B)

84. Plaintiffs reallege, and incorporate by this reference each and every allegation of paragraph 1 through paragraph 83 as if fully set forth herein

85. On 09/08/2022 Defendant Jamie Panuke acting under Color of Law did knowingly and willfully deprive Plaintiff Charlen Strang of her Fourth Amendment Right to be free from unreasonable search and seizure upon allowing her subordinates to Seize Plaintiff and hold her against her will for 30 hours while Natasha Chronister tried to obtain a warrant. Defendant Jamie Panuke directed a chain of actions that directly contributed to Plaintiff's injuries. Charlene Strang was harmed by the conduct of the Defendant as enumerated above, and that conduct was a major contributing factor in causing physical, emotional, and economic injuries to Plaintiff Charlene Strang in amounts to be proven at trial and justifying punitive damages as to individual defendants.

## THIRD CAUSE OF ACTION

(For deprivation of Plaintiff Shawn Cash's Fourteenth Amendment Right guaranteed to him by the Constitution of the United States, against Defendants Natasha Chronister, and Natasha Labosky-Ford in their individual, and official capacities). (Jury instructions 9.2, 9.32)

86. On 09/09/2022 Defendants Natasha Chronister, and Natasha Ford, acting under color of law, did knowingly, and willfully deprive Plaintiff Shawn Cash of his Fourteenth, Amendment Right secured to him by the Constitution of the United States when they deprived him of his daughter Minor E.C. without a warrant, probable or just cause, and without exigent circumstances, until he accepted a forced contract with the Defendants in which required him to submit to drug testing, and to sign an agreement under duress, as they had his daughter held against her will. These actions were a major factor in the physical, emotional, and economic injuries to Plaintiff Shawn Cash in amounts to be proved at trial and justifying punitive damages as to individual defendants.

## FOURTH CAUSE OF ACTION

(For deprivation of Plaintiff Shawn Cash's Fourteenth Amendment right guaranteed to hm by the Constitution of the Unites States, against Supervisor Jamie Panuke in her individual, and official capacities). (Jury instructions 9.4, 9.32)

87. Plaintiff re-alleges and incorporates by this reference each and every allegation of paragraph 1 through paragraph 86 as if fully set forth herein.

88. On 09/09/2022 Defendant Supervisor Jamie Panuke acting under color of law did knowingly, and willfully deprive Plaintiff Shawn Cash of his Fourteenth Amendment

Right to the care, custody, and control of his daughter, when Defendant directed Defendants Natasha Chronister, and Natasha Labosky-Ford to deprive Plaintiff of Familial Relationship of his daughter without a warrant, probable cause, and without exigent circumstances until Plaintiff Submit to an unwarranted Drug test, and enter into a forced contract with the Butte County Department of Employment and Social Services under duress as they had his daughter held against her will. These actions were a major contributing factor to the physical, emotional, and economic injuries to Plaintiff Shawn Cash in amounts to be proved at trial and justifying punitive damages as to individual Defendants.

## FIFTH CAUSE OF ACTION

(For deprivation of Plaintiff Charlene Strang Fourteenth Amendment Right guaranteed to her by the United States Constitution against Natasha Chronister, Natasha Labosky-Ford in their individual, and official capacities). (Jury instructions 9.3, 9.32).

89. Plaintiff re-alleges and incorporates by this reference each and every allegation of paragraph 1 through paragraph 88 as if fully set forth herein.

90. On 09/09/2022 Defendants Natasha Chronister, and Natasha Labosky-Ford acting under color of law, did knowingly, and willfully violate Plaintiff Charlene Strang Fourteenth Amendment Right to the care, custody, and control of her daughter when they contacted Chico Police Department for the purpose of detaining her daughter in violation of Penal Code 1165.13, and 18 U.S.C. Section 242 without a warrant, probable cause, and without exigent circumstances. Plaintiff Charlene Strang was harmed by the conduct of Defendants, as enumerated above, and that conduct was a major factor in causing physical, emotional, and economic injuries to the Plaintiff in amounts to be proved at trial and justifying punitive damages as to individual Defendants.

## SIXTH CAUSE OF ACTION

(For violation of Charlene Strang Fourteenth Amendment Right guaranteed to her by the United States Constitution against Defendant Supervisor Jamie Panuke in her individual, and official capacities). (Jury instructions 9.4, 9.32)

91.Plaintiff realleges and incorporates by this reference each and every allegation in paragraph 1 through paragraph 90 as if fully set forth herein.

92. On 09/09/2022 Defendant Supervisor Jamie Panuke acting under color of law, did knowingly and willfully deprive Plaintiff Charlene Strang of her Fourteenth Amendment Right guaranteed to her by the Constitution of the United States when Defendant Authorized Minor E.C. to be detained from Enloe Medical Center without a warrant, probable cause, without having exigent circumstances, in violation of Penal Code 11165.13, and in violation of 18 U.S.C Section 241, and 18 U.S.C. Section 242, Plaintiff

Charlene Strang was harmed by the conduct of Defendant, as enumerated above, and Defendants actions were a major factor in causing physical, emotional, and economic injuries to Plaintiff Charlene Strang in amounts to be proved at trial and justifying punitive damages as to individual Defendant.

## SEVENTH CAUSE OF ACTION

(For violation of Plaintiff Shawn Cash Fourteenth Amendment Right guaranteed him by the United States Constitution against Defendants Natasha Chronister, and Natasha Labosky-Ford in their individual, and official capacities). (Jury instructions 9.3, 9.32).

93. Plaintiff realleges and incorporates by this reference each and every allegation in paragraph 1 through paragraph 92 as if fully set forth herein.

94. On 09/09/2022 Defendants Natasha Chronister, and Natasha Labosky-Ford did knowingly and willfully deprive Plaintiff Shawn Cash of his Fourteenth Amendment Right guaranteed to him by the Constitution of the United States, when Defendants contacted Defendant Lindsay Stalnaker for the purpose of detaining Minor E.C from Enloe Medical Center without a warrant, probable cause, without having exigent circumstances, and in violation of penal code 11165.13, and in violation of 18 U.S.C. Section241 and 18 U.S.C. Section 242. Plaintiff Shawn Cash was harmed by the conduct of Defendants as enumerated above, Defendants action were a major factor in causing physical, emotional, and economic injuries to Plaintiff in amounts to be proved at trial and justifying punitive damages as to individual Defendant.

## EIGHTH CAUSE OF ACTION

(For deprivation of Plaintiff Shawn Cash Fourteenth Amendment Right guaranteed to him by the Constitution of the United States against Defendant Lindsay Stalnaker in her individual and official capacities). (Jury instructions 9.3, 9.32)

95. Plaintiff incorporates by this reference each and every allegation in paragraphs 1 through 93 as if set fully herein.

96. On 09/09/2022 Defendant Lindsay Stalnaker acting under color of law did willfully, and knowingly did deprive Plaintiff Shawn Cash of his Fourteenth Amendment Right to the care, custody, and control of his daughter when Defendant detained Minor E.C from Enloe Medical Center without a warrant, just or probable cause, and without exigent circumstances. Failing to do an independent investigation. Plaintiff Shawn Cash was harmed by the actions of the Defendant as enumerated above. Defendant's actions were a major contributing factor to the physical, emotional, and economic injuries to Plaintiff Shawn Cash in the amounts to be determined at trial, and in justifying punitive damages to each individual Defendant.

## NINTH CAUSE OF ACTION

(For deprivation of Plaintiff Charlene Strang's Fourteenth Amendment Right guaranteed to her by the Constitution of the United States against Defendant Lindsay Stalnaker in her individual, and official capacities. (Jury instructions 9.3, 9.32)

97. Plaintiff realleges each and every allegation in paragraphs 1 through 96 as if fully set forth herein.

98. On 09/09/2022 Defendant Lindsay Stalnaker acting under color of law did willfully, and knowingly did deprive Plaintiff Charlene Strang of her Fourteenth Amendment Right to the care, custody, and control of her daughter when Defendant detained Minor E.C from Enloe Medical Center without a warrant, just or probable cause, and without exigent circumstances. Failing to do an independent investigation. These actions were a major contributing factor to the physical, emotional, and economic injuries to Plaintiff Charlene Strang in the amounts to be determined at trial, and in justifying punitive damages to each individual Defendants.

## TENTH CAUSE OF ACTION

(For deprivation of Plaintiff Shawn Cash's Fourteenth Amendment right guaranteed to him by the Constitution of the United States against Defendant's Natasha Chronister, and Natasha Labosky-Ford in their individual, and official capacities) (Jury instructions 9.3, 9.32, 9.33, 9.33A).

99. Plaintiff realleges and incorporates all allegations in paragraph 1 through paragraph 98 as fully set forth herein.

100. On 9/13/2022 Defendants Natasha Chronister, and Natasha Labosky-Ford did knowingly and willfully deprive Plaintiff Shawn Cash, of his Fourteenth Amendment Right guaranteed to him by the Constitution of the United States when they failed to provide courts with known exculpatory evidence after both Plaintiffs reported to them that Plaintiff Shawn Cash was unaware of Plaintiff Strang's one time use. Plaintiff Shawn Cash was harmed by the Defendant's actions as enumerated above. These actions were a major contributing factor to the physical, emotional, and economic injuries to Plaintiff Shawn Cash in the amounts to be determined at trial, and in justifying punitive damages to each individual Defendant.

## ELEVENTH CAUSE OF ACTION

(For the deprivation of Plaintiff Charlene Strang's Fourteenth Amendment Right guaranteed to her by the Constitution of the United States against Defendant's Natasha Chronister, and Natasha Labosky-Ford in their individual and official capacities.) (Jury instruction 9.3, 9.32, 9.33, 9.33A)

101. Plaintiff realleges and incorporates each and every allegation in paragraph 1 through paragraph 100 as fully set forth herein

102. On 9/13/2022 Defendant Natasha Chronister, and Defendant Natasha Labosky-Ford did knowingly and willfully deprive Plaintiff Charlene Strang of her Fourteenth Amendment Right guaranteed to her by the Constitution of the United States when Defendants Fabricated Evidence on a Petition to the Superior Court County of Butte Stating Plaintiff "has an ongoing, untreated substance abuse issue that impacts her ability to provide protection, supervision, and regular care to her child" Defendants knew this statement to be false at the time it was made. These actions resulted in Minor E.C. being further detained from Plaintiff. Plaintiff Charlene Strang was harmed by the Defendants actions as enumerated above. These actions were a major contributing factor to the physical, emotional, and economic injuries to Plaintiff Charlene Strang in the amounts to be determined at trial, and in justifying punitive damages to each individual Defendant.

## TWELVETH CAUSE OF ACTION

(For the deprivation of Plaintiff Charlene Strang's Fourteenth Amendment Right guaranteed to her by the Constitution of the United States against Defendant Jamie Panuke in her individual, and official capacities.) (Jury instructions 9.4, 9.32, 9.33, 9.33A)

103. Plaintiff realleges and incorporates each and every allegation in paragraph 1 through paragraph 102 as fully set forth herein

104. On 9/13/2022 Defendant Jamie Panuke, did knowingly and willfully deprive Plaintiff Charlene Strang of her Fourteenth Amendment Right guaranteed to her by the Constitution of the United States when Defendant Signed the Detainment Report authorizing the Fabricated Evidence on a Petition to the Superior Court County of Butte Stating "Plaintiff has an ongoing, untreated substance abuse issue that impacts her ability to provide protection, supervision, and regular care to her child" Defendant knew this statement to be false at the time it was made. Plaintiff Charlene Strang was harmed by Defendants actions as enumerated above. These actions were a major contributing factor to the physical, emotional, and economic injuries to Plaintiff Charlene Strang in the amounts to be determined at trial, and in justifying punitive damages to each individual Defendant.

## THIRTEENTH CAUSE OF ACTION

(For deprivation of Plaintiff Shawn Cash Fourteenth Amendment Right guaranteed to him by the Constitution of the United States against Defendant Natsha Labosky-Ford in her individual, and official capacities). (Jury instructions 9.3, 9.32, 9.33, 9.33A)

105. Plaintiff incorporates by this reference each and every allegation in paragraphs 1 through 104 as if set fully herein.

106. On 09/09/2022 Defendant Natasha Labosky-Ford acting under color of law did willfully, and knowingly did deprive Plaintiff Shawn Cash of his Fourteenth Amendment

Right to the care, custody, and control of his daughter when Defendant Natasha Labosky-Ford fabricated evidence in a petition to the Superior Court, County of Butte stating that Plaintiff Shawn Cash has a ongoing untreated substance abuse issue that hinders his ability to provide safety, protection, and care to his child. Plaintiff Shawn Cash was harmed by the actions of the Defendant as enumerated above. These actions were a major contributing factor to the physical, emotional, and economic injuries to Plaintiff Shawn Cash in the amounts to be determined at trial, and in justifying punitive damages to each individual Defendant.

## FOURTEENTH CAUSE OF ACTION

(For deprivation of Plaintiff Shawn Cash Fourteenth Amendment Right guaranteed to him by the Constitution of the United States against Defendant Natasha Labosky-Ford in her individual, and official capacities). (Jury instructions 9.3, 9.32, 9.33, 9.33B)

107. Plaintiff incorporates by this reference each and every allegation in paragraphs 1 through 106 as if set fully herein.

108. On 10/12/2022 Defendant Natasha Labosky-Ford acting under color of law did willfully, and knowingly did deprive Plaintiff Shawn Cash of his Fourteenth Amendment Right to the care, custody, and control of his daughter when she came to the Cash home, and took Minor A.J. to the park, threatening Plaintiff Charlene Strang that as long as Plaintiff Shawn Cash was in the home then Minor A.J would be detained. Forcing Plaintiff Charlene Strang to kick Plaintiff Shawn Cash out of his home for over 14 days in 30-degree weather with nowhere to live. Plaintiff Shawn Cash was harmed by Defendants actions as enumerated above. These actions were a major contributing factor in the physical, emotional, and economical injuries to Plaintiff Shawn Cash in amounts to be proved at trial, and in justifying punitive damages to each individual Defendant.

## FIFTEENTH CAUSE OF ACTION                    (For

deprivation of Plaintiff Shawn Cash's Fourteenth Amendment Right guaranteed to him by the Constitution of the United States against Defendant Natasha Labosky-Ford in her individual, and official capacities.). (Jury instructions 9.3, 9.32, 9.33, 9.33A)

109. Plaintiff incorporates by this reference each and every allegation in paragraphs 1 through 108 as if set fully herein.

110. On 11/3/2022 Defendant Natasha Labosky-Ford acting under color of law did willfully, and knowingly did deprive Plaintiff Shawn Cash of his Fourteenth Amendment Right to the care, custody, and control of his daughter when Defendant detained Minor A.J. in retaliation of Plaintiff submitting an objection to the Social Workers report outlining the kidnapping of Minor E.C. Obtaining said warrant for detainment of Minor A.J. through Perjury, and Fabrication of evidence. Plaintiff Shawn Cash was harmed by the actions of the Defendant as enumerated above. These actions were a major

contributing factor to the physical, emotional, and economic injuries to Plaintiff Shawn Cash in the amounts to be determined at trial, and in justifying punitive damages to each individual Defendant.

## SIXTEENTH CAUSE OF ACTION

(For violation of Plaintiff Charlene Strang's Fourteenth Amendment Right guaranteed him by the United States Constitution against Defendant Natasha Labosky-Ford in her individual, and official capacities). (Jury instructions 9.3, 9.32, 9.33, 9.33A).

111. Plaintiff realleges and incorporates by this reference each and every allegation in paragraph 1 through paragraph 110 as if fully set forth herein.

112. On 11/1/2022 Defendant Natasha Labosky-Ford did knowingly and willfully deprive Plaintiff Charlene Strang of her Fourteenth Amendment Right guaranteed to her by the Constitution of the United States, when Defendant perjured herself in the Superior Court County of Butte stating that Plaintiff Charlene Strang was using methamphetamines and had tested presumptive positive on four of her drug tests given by Butte County Department of Employment and Social Services. Defendant Labosky-Ford knew this statement was false at the time of stating it, as she had the negative results back from Redwood Toxicology on or before 10/28/2022 Plaintiff Charlene Strang was harmed by the conduct of Defendants as enumerated above, and that conduct was a major factor in causing physical, emotional, and economic injuries to Plaintiff in amounts to be proved at trial and justifying punitive damages as to individual Defendant.

## SEVENTEENTH CAUSE OF ACTION

(For deprivation of Plaintiff's Fourteenth Amendment Rights guaranteed to them by the Constitution of the United States against Butte County Department of Employment and Social Services in their official capacity, Defendant Jamie Panuke as supervisor in the detainment of Minor E.C and failure to implement disciplinary protocols to protect Plaintiffs civil rights, in her individual capacity, Defendant T.J. Grundy in the detainment of Minor A.J and failure to implement disciplinary protocols to protect the civil rights of Plaintiffs, Defendant Jesse Lambert for the continued detainment of Plaintiffs children and failure to implement disciplinary protocols to protect civil rights of plaintiffs in his individual capacity, and against Defendant Nanette Norton for failure to implement disciplinary procedures to protect Plaintiffs civil rights in her individual capacity ). (Jury instructions 9.5, 9.8, 9.32,)

113. Plaintiff realleges each and every allegation in paragraph's 1 through 112 as if fully set forth within. Butte County Department of Employment and Social Services is implied to have had a major role in all causes of actions.

114. On the dates 09/09/2022 through the current date today Defendant Butte County Department of Employment and Social Services acting under color of law did

knowingly, and willingly oversee all actions done by their respective employees, and Supervisors in each and every action done beforehand. Defendants discussed the going On's of each individual case and made decisions as a whole. The aforementioned actions were constantly a callous and reckless disregard for the Constitutionally Protected Fundamental Liberty Interests of the plaintiffs. The detainment of Plaintiff Charlene Strang, and Minor E.C were the direct plan of the Butte County Department of Employment and Social Services. These actions of the defendants harmed both Plaintiff's in unmeasurable amounts. Both Plaintiff's Shawn Cash, and Charlene Strang were newlywed's, both were starting individual businesses that they subsequently lost in having the need to learn Law really quickly to be able to defend their family against false allegations, fabricated evidence, withholding exculpatory evidence, never having one ounce of physical evidence of any wrongdoing by the Plaintiff's that warranted detainment of their children. Plaintiff did use one-time which services should have been set up for mom and baby to keep the Family together pursuant to California Penal Code Section 11165.13 and Health and Safety code Section 123605 with Penal Code 11165.13 stating do not make a report to law enforcement. This Statute is well known to social workers, as it is the same statute that if there is a danger to the child beyond just a dirty test is the statute that forces hospitals to call them. The Defendants actions have been practiced for longer than just this single case. It is a well-articulated plan of action, policies, and customs to remove children from parents no matter how many laws they break in the process. The framework of Penal Code 11165.13 is in large part due to Furgeson v. City of Charleston. So, when it says do not make a report to law enforcement it is for a reason. This reason is due to Law Enforcement being the only one with the power to detain. So, in essence the Law states my child should have never been detained. Butte County Department of Employment and Social Services were ultimately supposed to do their job and keep the family together as is the intent of Legislature, and connected Mother and baby with services positive to family growth. For it is in those families that Community strength comes from.

## VIII. REQUEST FOR RELIEF

113. Plaintiff requests injunctive relief pursuant to Code of Civil Procedure 526 (a) (1) (3)(6) in the form of a  Temporary Restraining Order be put into place until the finalization of these matters for all CPS/DCSF/DESS/Human Services agency's including, but not limited to Butte County Department of Employment, and Social Services restraining them from ordering unsuspecting parents to submit to a drug test outside of a court order signed by a Judge, or unless their drug testing request slips say in clear and concise language of the parents the following statement:

Submitting to a drug test without a court order waives your Fourth Amendment Right to be free from unreasonable search and seizure, and also waives your Fifth Amendment Right to not incriminate oneself. The results of this test can and will be used against you in a court of law.

■ I understand and give up these rights.

Parents facing possible detainment of their children and/or Termination of their Parental rights must be aware of their Constitutional Rights, and, and CPS/DCSF/DCSS has a duty to inform parents of their Rights before ordering violations of parents Constitutional Rights. They have no policing power, and if they are going to be making decisions as to who is searchable, siezable, and testable without Judicial Authorization violating due process rights their form must at least have a disclaimer offering a choice.

113. Plaintiff further requests the courts to restrain said CPS, DCSF, DCSS, including, but not limited to Butte County Department of Employment and Social Services to be Restrained temporarily until the outcome of these matters from arresting or detaining said "Victim" of abuse unless there is one of the following:

1)Judicial Warrant signed by a Judge/magistrate of the Courts

2) Sufficient evidence of child abuse or neglect to warrant the arrest and/or detainment of the parents. If there is not sufficient evidence to arrest, put into jail for even 72 hours, and prosecute a parent/guardian and give them due process rights, Childrens Services could not possibly have enough evidence to sever familial relationships possibly permanently. DCSF/CPS/DCSS has and will continue to take the "risk factor" way too far severing tens of thousands of families that are all over this country. Due Process in the United States says nowhere that if you don't have evidence against a perpetrator of child abuse then you can just go arrest the victim of said abuse and make them go live with strangers. Leaving Parents or guardians at home without being a perpetrator of any crime. Especially when Butte County Department of Employment and Social Services strives for Termination proceedings in so many cases. Stopping this abusive, unconstitutional, action happening daily will be a huge relief to public interest and will stop many future Federal Causes of Actions with the same violations of the law. Plaintiff requests that these protections of civil rights continue through the use of a permanent injunction, or District Court's published opinion upon the finalization of these proceedings.

114. A civil right is an enforceable right or privilege, which if interfered with by another gives rise to an action for injury. Discrimination occurs when the civil rights of an individual are denied or interfered with because of the individual's membership in a particular group, or class. Including social class. DCSF has predominately removed children from lower class families for decades, without regard to the constitutional rights as Americans. Incentivized payments for children in foster care or being adopted are only

paid on children whose families qualify for Aid for Dependent Families (welfare) under the Social Security Administration Adoption and Safe Families Act of 1997. Making it a clear incentive to adopt lower class children to higher class parents.

115. Plaintiffs also request Compensatory Damages for above financial, physical damages, and severing of familial relations of the plaintiffs, emotional distress of all four members of the Family, future psychological treatment of all Plaintiffs, damage to plaintiffs' reputation, both plaintiffs lost their businesses, almost lost their home, have spent countless amount of hours researching resolve to the illegal activities of the government and how to right the devastating actions taken place to their family by government actors. Plaintiffs seek damages in the amount favorable to the courts. Plaintiffs also request Punitive Damages for the reckless and callous indifference to the Federally Protected rights of the Plaintiff's in the amount favorable to the courts. Plaintiff also requests Attorney's fees and costs if the courts deem possible to appoint council to plaintiff's due to the nature of these actions, and Plaintiff's being unschooled in Law.

### IX DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all issues raised in this complaint

Dated this 29th of April 2023

    Shawn Paul Cash             In Pro Se
    Charlene Kay Strang     In Pro Se

# MEMORANDUM OF POINTS AND AUTHORITIES

(*Jennifer A.*) and *In re Drake M.* (2012) 211 Cal.App.4th 754 [149 Cal.Rptr.3d 875] (*Drake M.*), do not support a rule that substance abuse within the meaning of section 300, subdivision (b), must be established by evidence of a medical professional's diagnosis of a substance abuse pathology, or, at least, by evidence showing factors that are recognized in the medical profession to support a diagnosis of a substance abuse pathology. Although the *Jennifer A.* and *Drake M.* opinions both noted the absence of a medical diagnosis of a substance abuse problem, we do not read either opinion to support the proposition that a showing of a medical diagnosis is a *required* element of proof to find substance abuse under section 300, subdivision (b).

As the summary of the *Jennifer A.* and *Drake M.* opinions show, neither case supports the rule that a diagnosis of a substance abuse problem is a required element of proof to find a substance abuse problem. On the contrary, the rule to be taken from *Jennifer A.* and *Drake M.* is that the absence of a medical diagnosis of substance abuse, and a lack of evidence of life-impacting effects of drug use, will not support a finding that a parent has a substance abuse problem justifying the intervention of the dependency court.

DCFS next argues that methamphetamine, amphetamine and marijuana are well recognized to be substances which cause hallucinogenic or

[228 Cal.App.4th 728]

stimulant-driven behavior. DCFS argues that "[t]he risk to a child being cared for by a parent under the influence of such substances is not speculative." We do not accept DCFS's argument. It excises out of the dependency statutes the elements of causation and harm. In other words, DCFS essentially argues that, when a parent engages in substance abuse, dependency court jurisdiction is proper. This is not what the dependency law provides. Further, if DCFS's position were accepted, it would essentially mean that physical harm to a child is *presumed* from a parent's substance abuse under the dependency statutes, and that it is a parent's burden to prove a negative, i.e., the *absence* of harm. Again, this is not what the dependency law provides. We agree with Mother that the evidence in the case is not sufficient to support the finding that her substance abuse is causing, or there is a risk it will cause, physical harm to Rebecca.

In re Rebecca C., B253065 2228 Cal.App.4th 720 (2014)


IN RE DESTINY S

It is undisputed that a parent's use of marijuana "without more." does not bring a minor within the jurisdiction of the dependency court.   (In re Alexis E. (2009) 171 Cal.App.4th 438, 453, 90

Cal.Rptr.3d 44: italics in original.)   The same is true with respect to the use of hard drugs.   (In re Rocco M. (1991) 1 Cal.App.4th 814, 817, 825–826, 2 Cal.Rptr.2d 429 [mother's cocaine use standing alone was not sufficient basis or jurisdiction under section 300, subdivision (b) ]; and see In re Jeannette S. (1979) 94 Cal.App.3d 52, 59, fn. 2, 156 Cal.Rptr. 262 [father's alcoholism alone did not support jurisdiction under section 300, subdivision (b) ].) Instead, the DCFS had to present evidence of a specific, non-speculative and substantial risk to Destiny of serious physical harm.   (In re David M. (2005) 134 Cal.App.4th 822, 830, 36 Cal.Rptr.3d 411 [jurisdiction under section 300, subdivision (b), reversed where mother had continuing substance abuse problem, but there was no evidence of a specific, defined risk of harm from mother's substance abuse].)

DCFS contends it produced "more" than just evidence of Mother's drug use.

It points to Destiny's statement to a DCFS worker that although she has never seen " 'the other thing that mother smokes' " sometimes she can smell it " 'but it's not very much.' " [4] Based on this ambiguous statement the DCFS proclaims it has produced "direct evidence mother failed to protect Destiny from the negative effects of secondhand smoke."   We disagree.   No evidence suggested that Destiny was at risk of imminent physical harm caused by the second-hand smoke from Mother's use of marijuana.   In any event, the logical consequence of the Department's argument would be to remove minor children from the homes of all smokers in Los Angeles County—regardless of what they smoke.   We know of no legal support for this proposition.

DCFS next refers us to a report it received in 2002, when Destiny was one year old, alleging that Mother was using methamphetamine and left Destiny unattended for long periods of time, did not bathe or feed her and that Destiny drank alcohol that Mother left within her reach.   The Department's investigation at the time showed that Destiny was in the care of her paternal grandmother who was willing to care for her.   The referral was closed on the basis that the "situation stabilized." [5]

Evidence of such conduct that may have occurred nine years before the petition under review was filed cannot support jurisdiction under section 300, subdivision (b), which requires proof of a current risk to the child.   (See discussion, ante, at p. 803.) There is no evidence in this case that Mother's drug use caused her to neglect Destiny.   On the contrary, the undisputed evidence showed that at the time of this petition Destiny's home was "neat and clean," Destiny had her own bedroom "which was nicely decorated," no drug paraphernalia was observed in the home and the refrigerator and cabinets were stocked with "an adequate amount of food and all of the utilities were in proper working order."   It was also undisputed that Destiny "has no behavioral or discipline issues and attends school regularly" and wanted "to go back with [her] mom."   As to the allegation that Mother left alcohol where one-year-old Destiny could reach it, 11–year–old Destiny "was old enough to avoid the kinds of physical dangers which make infancy an inherently hazardous period of life."   (In re Rocco M., supra, 1 Cal.App.4th at p. 825, 2 Cal.Rptr.2d 429.)   Finally, at the time of the jurisdictional hearing Mother had tested clean for marijuana and methamphetamine for three months.

C.   Section 300.2

Finally, the DCFS attempts to justify jurisdiction based on section 300.2 which states: "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." Section 300, subdivision (b), however, requires a showing of a risk of serious physical harm resulting from Mother's substance abuse. Thus, the "negative effects" referenced in section 300.2 must be of the sort likely to result in serious physical harm. No such negative effects have been shown in this case.

DISPOSITION

Because the court lacked jurisdiction over Destiny, its jurisdictional order is reversed and all subsequent orders are vacated as moot. (In re Maria R. (2010) 185 Cal.App.4th 48, 71, 109 Cal.Rptr.3d 882.)

1.    All statutory references are to the Welfare and Institutions Code.

2.    Destiny's father is not a party to this appeal.

3.    The court struck the allegation that Destiny was at risk of physical "damage."

4.    Presumably the "other thing" was marijuana.

5.    The DCFS claimed in a report to the court in this case that the above allegations against Mother were "substantiated" but this appears incorrect because the Department also states in the same report: "Referral closed as situation stabilized" and stated in a another report to the court in this case that: "The family has no prior DCFS/Juvenile Court cases."

ROTHSCHILD, Acting P.J.

We concur: CHANEY and JOHNSON, JJ.

In re drake m

DCFS argued before the trial court that, based on father's testimony, he was under the influence of marijuana while caring for Drake. Counsel for DCFS stated on the record, "[h]e indicated that four or five times a week he uses marijuana. He then – eventually a number of hours later – goes and picks up the child, he's then home alone with the child. I think we quite well know that marijuana doesn't wear off in four hours. It's true I don't have evidence that he smokes in the same room as the minor but that's not the primary issue. He is a regular caretaker for the child and is regularly under the influence of marijuana both legally, and . admitted [that] he cannot be driving with the child. He would be – he would be subject to sanctions should he be driving with the child. This father regularly tests dirty for marijuana. The notion he's not

under the influence is ridiculous.   He's legally over any indication that is allowed on any sort of driving limit.   I think that the court can easily find that he's regularly under the influence while caring for his child." (Italics added.)   DCFS provided no evidence, through expert testimony or otherwise, showing that four hours after smoking marijuana father was still under the influence of marijuana and was unable to operate a vehicle or care for a child.

The trial court found that the allegations against father in the petition, as amended, were true.   It ordered Drake placed with father under DCFS supervision.   Mother was allowed to live in the home on the condition that she submit to weekly random drugs tests and the results of such tests were clean.   She was also ordered to comply with her counseling programs and take all prescribed medication.   Family reunification services were ordered for mother.   Family maintenance services were ordered for father.   Father was ordered to avoid being under the influence of marijuana while providing care for Drake.   He was also ordered to submit to random drug testing and to attend parenting courses and drug counseling sessions.   Father timely appealed.

Father contends that the evidence was insufficient to support the trial court's finding that his conduct, as alleged in count b–3, caused Drake to suffer, or to be at a substantial risk of suffering, serious physical harm or illness.   He also contends that the trial court's orders based on such finding constitute an abuse of discretion.   He seeks to reverse the judgment with respect to count b–3 and the orders based on such count.

DISCUSSION

1.   The Merits of Father's Appeal Should Be Addressed

DCFS pointed out in its opposition that should we reverse the judgment as to father, the unchallenged findings as to mother will continue to support dependency jurisdiction pursuant to section 300, subdivision (b).   (See, In re Alysha S. (1996) 51 Cal.App.4th 393, 397, 58 Cal.Rptr.2d 494.)   In making this assertion, DCFS appears to argue that reaching the merits of father's appeal will have no practical impact on the dependency proceeding as a result because it is moot.   We disagree.

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the [trial] court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.   In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence."   (In re Alexis E. (2009) 171 Cal.App.4th 438, 451, 90 Cal.Rptr.3d 44.)   However, we generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal (see, e.g., In re Alexis E., supra, at p. 454, 90 Cal.Rptr.3d 44); (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings (In re D.C. (2011) 195 Cal.App.4th 1010, 1015, 124 Cal.Rptr.3d 795; see also, In re I.A. (2011) 201 Cal.App.4th 1484, 1494, 134 Cal.Rptr.3d 441); or (3) "could have other consequences for [the appellant], beyond jurisdiction" ( In re I.A.,

supra, at p. 1493, 134 Cal.Rptr.3d 441 [not reaching the merits of an appeal where an alleged father "has not suggested a single specific legal or practical consequence from this finding, either within or outside the dependency proceedings"] ).

Here, the outcome of this appeal is the difference between father's being an "offending" parent versus a "non-offending" parent.    Such a distinction may have far reaching implications with respect to future dependency proceedings in this case and father's parental rights.    Thus, although dependency jurisdiction over Drake will remain in place because the findings based on mother's conduct are unchallenged, we will review father's appeal on the merits.

2.    There is No Substantial Evidence To Support the Trial Court's Jurisdictional Finding With Respect to Father

Father contends that the evidence was insufficient to support the trial court's finding that his conduct, as alleged in count b–3, caused Drake to suffer, or to be at a substantial risk of suffering, serious physical harm or illness.    We agree.

"We review the juvenile court's jurisdictional findings for sufficiency of the evidence. [Citations.]    We review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible.    [Citation.]    'However, substantial evidence is not synonymous with any evidence.    [Citations.]    A decision supported by a mere scintilla of evidence need not be affirmed on appeal.    [Citation.]    Furthermore, "[w]hile substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]: inferences that are the result of mere speculation or conjecture cannot support a finding [citations]."    [Citation.]    "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record."    [Citation.]'    [Citation.]"    (In re David M. (2005) 134 Cal.App.4th 822, 828, 36 Cal.Rptr.3d 411.

In re drake m

DCFS failed to show that father was unable to provide regular care for Drake due to father's substance abuse.    Both DCFS and the trial court apparently confused the meanings of the terms "substance use" and "substance abuse."    The statute is clear, however, jurisdiction based on "the inability of the parent or guardian to provide regular care for the child due to the parent's . substance abuse," must necessarily include a finding that the parent at issue is a substance abuser. (§  300, subd. (b).)    We have previously stated that without more, the mere usage of drugs by a parent is not a sufficient basis on which dependency jurisdiction can be found.    (See e.g., In re Alexis E., supra, 171 Cal.App.4th at p. 453, 90 Cal.Rptr.3d 44 [" . [W]e have no quarrel with Father's assertion that his use of medical marijuana, without more, cannot support a jurisdiction finding that such use brings the minors within the jurisdiction of the dependency court, not any more than his use of the medications prescribed for him by his psychiatrist brings the children within the jurisdiction of the court"]; In re Destiny S. (2012) 210 Cal.App.4th 999, ——, 148 Cal.Rptr.3d 800 ["It is undisputed that a parent's use of marijuana[, hard drugs, or

alcohol] 'without more.' does not bring a minor within the jurisdiction of the dependency court"].)   The question then arises, what constitutes substance abuse?

The Legislature included no definition of the term "substance abuse" when it rewrote section 300 in 1987.   And a review of the legislative history surrounding the revisions has revealed no specific discussion of how such term should be defined in practice.   Dependency cases have varied widely in the kinds of parental actions labeled "substance abuse."   Thus, we find a workable definition is necessary to avoid any resulting inconsistencies.

Many cases, outside the dependency context, have relied on various definitions of psychiatric disorders found in The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed.   2000) (DSM–IV–TR).   But we have found only one published case within the dependency scheme that does so with respect to the term "substance abuse." [9]   That case is Jennifer A. v. Superior Court (2004) 117 Cal.App.4th 1322, 12 Cal.Rptr.3d 572.

Although Jennifer A. involved a different phase in the dependency process, it is instructive here. The mother in that case petitioned for a writ of mandate seeking relief from the lower court's order terminating her reunification services and setting a hearing under section 366.26 to evaluate whether her parental rights should be terminated.   The children at issue "were not initially detained due to Mother's drug use, and the petition did not raise drug abuse as a ground for removing the children from [her] custody."   (Jennifer A., supra, 117 Cal.App.4th at p. 1344, 12 Cal.Rptr.3d 572.)   The evidence in the record showed that the mother was employed and, since the case was opened, had received a promotion; that there was no evidence of physical or emotional abuse; that the children's living conditions were adequate; and, outside the one incident where the mother left the children unattended accidentally, that she acted appropriately and knew proper parenting behavior.   (Id. at p. 1326–1327, 12 Cal.Rptr.3d 572.)   Regardless, "[t]he basis for the [lower] court's finding of detriment primarily was Mother's missed, diluted, and positive drug tests between the 12–month review report/hearing and the 18–month review report/hearing."   (Id. at p. 1346, 12 Cal.Rptr.3d 572.)

We find Jennifer A. v. Superior Court persuasive and hold that a finding of substance abuse for purposes of section 300, subdivision (b), must be based on evidence sufficient to (1) show that the parent or guardian at issue had been diagnosed as having a current substance abuse problem by a medical professional; or (2) establish that the parent or guardian at issue has a current substance abuse problem as defined in the DSM–IV–TR.   The full definition of "substance abuse" found in the DSM–IV–TR describes the condition as "[a] maladaptive pattern of substance use leading to clinically significant impairment or distress, as manifested by one (or more) of the following, occurring within a 12–month period: [¶] (1) recurrent substance use resulting in a failure to fulfill major role obligations at work, school, or home (e.g., repeated absences or poor work performance related to substance use; substance-related absences, suspensions, or expulsions from school; neglect of children or household)[; ¶] (2) recurrent substance use in situations in which it is physically hazardous (e.g., driving an automobile or operating a machine when impaired by substance use)[; ¶] (3) recurrent substance-related legal problems (e.g., arrests for substance-related disorderly conduct)[; and ¶] (4) continued substance use despite having persistent or recurrent social or interpersonal problems caused or exacerbated

by the effects of the substance (e.g., arguments with spouse about consequences of intoxication, physical fights)." (DSM–IV–TR, at p. 199.)

Although a finding of substance abuse is necessary under this prong of section 300, subdivision (b), it does not always follow that such a finding means that the parent or guardian at issue is unable to provide regular care resulting in a substantial risk of physical harm to the child.   The trial court is in the best position to determine the degree to which a child is at risk based on an assessment of all the relevant factors in each case.   That being said, "[c]ases finding a substantial physical danger tend to fall into two factual patterns.   One group involves an identified, specific hazard in the child's environment — typically an adult with a proven record of abusiveness.   [Citations.]   The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety.   [Citations.]"   (In re Rocco M. (1991) 1 Cal.App.4th 814, 824, 2 Cal.Rptr.2d 429.)   And we also hold that, in cases involving the second group, the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm.

Search Phrase: [                    Highlight    ]

ARTICLE 2.5. Child Abuse and Neglect Reporting Act [11164 - 11174.3]
  ( Heading of Article 2.5 amended by Stats. 1987, Ch. 1444, Sec. 1. )

11165.13.
For purposes of this article, a positive toxicology screen at the time of the delivery of an infant is not in and of itself a sufficient basis for reporting child abuse or neglect. However, any indication of maternal substance abuse shall lead to an assessment of the needs of the mother and child pursuant to Section 123605 of the Health and Safety Code. If other factors are present that indicate risk to a child, then a report shall be made. However, a report based on risk to a child which relates solely to the inability of the parent to provide the child with regular care due to the parent's substance abuse shall be made only to a county welfare or probation department, and not to a law enforcement agency.

(Amended by Stats. 2000, Ch. 916, Sec. 11. Effective January 1, 2001.)

3. Appropriate measures to protect of children from parental drug dependence States Parties shall pursue full implementation of this right and, in particular, shall take appropriate measures: (d) To ensure appropriate pre-natal and post-natal health care for mothers The influence of stress, drinking, smoking and using drugs during pregnancy is becoming increasingly clear38 as are the potentially irreversible

effects on foetuses.39 Many children suffer the first days of their life from neonatal abstinence syndrome. This raises many difficult ethical and practical questions. It must be made very clear that many women who use drugs and are pregnant will often want to seek assistance. A major barrier to this is fear of coming into contact with law enforcement or stigma and discrimination about their drug use or dependence. The Irish Women's Health Council has noted that '[T]here is still a double standard that judges women's substance misuse more harshly than men's, particularly if the woman has children. This greater stigma can result in greater guilt and shame for women and for their families, and may lead to women being reluctant to seek treatment.'40 There is also the fear of losing their child. While parental drug use and dependence can have considerable impacts on children41 it is not the case that removing a child from a parent who uses drugs is in each case an 'appropriate measure' to protect that child, nor is it always in the child's best interests. Not all people who use drugs are dependent, and not all people who are drug dependent are causing their children significant harm. Drug use or dependence alone is not sufficient as a reason to take children into care. Each case must be taken on its own circumstances, and while removal from custody may be required in the child's best interests, and is sometimes requested by struggling parents, other options are available. For example, focused social work geared towards improving parenting skills and fostering family cohesion has shown to be promising.42 This in turn could contribute towards the rendering of 'appropriate assistance to parents and legal guardians in the performance of their child-rearing responsibilities' for the purposes of article 18(2). The Committee on the Rights of the Child has made clear the need to support families experiencing drug or alcohol dependence.43 In relation to pregnancy, consensual and supportive approaches are available in some countries, such as drug liaison midwives who can assist drug using women who are pregnant.44 Voluntary, community-based drug treatment services also play an important role.45 Substitution therapy (e.g. with methadone or buprenorphine) is also recommended for pregnant opiate users.46 Studies have shown that methadone exposure is, however, associated with adverse perinatal outcomes47 (though less than if the mother continued using street heroin). Specialised care for pregnant women who are prescribed methadone and their babies is therefore required. Some countries, however, allow for detention for the entirety of a pregnancy if the mother tests positive for drugs.48 Such laws raise considerable human rights, medical ethics and due process concerns. 7 A recent UNICEF report puts the challenge succinctly: 'to change the attitude of both society and health-care professionals so that these women are treated as 'pregnant women who have a problem of drug use' and who need to be treated with dignity and respect, rather than just 'drug users who happen to be pregnant', with all that this implies'.49

Drug use, drug dependence

UN Convention on the Rights of the Child

Submission to the UN Committee on the Rights of the Child:

General Comment on Article 24