IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN PAUL CASH, et al., | No. 2:23-CV-1572-DMC |
| Plaintiffs, | |
| v. | ORDER |
| NATASHA CHRONISTER, et al., | |
| Defendants. | |

Plaintiffs, who are proceeding pro se and in forma pauperis, bring this civil action. Pending before the Court is Plaintiffs' original complaint, ECF No. 1.

The Court is required to screen complaints brought by litigants who have been granted leave to proceed in forma pauperis. See 28 U.S.C. § 1915(e)(2). Under this screening provision, the Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(A), (B). Moreover, pursuant to Federal Rule of Civil Procedure 12(h)(3), this Court must dismiss an action if the Court determines that it lacks subject matter jurisdiction. Because Plaintiffs have been granted leave to proceed in forma pauperis, the Court will screen the initial complaint pursuant to § 1915(e)(2). Pursuant to Rule 12(h)(3), the Court will also consider as a threshold matter whether it has subject-matter jurisdiction.

## I.  PLAINTIFFS' ALLEGATIONS

This action is brought by two plaintiffs, Shawn Paul Cash ("Plaintiff Cash") and Charlene Kay Strong ("Plaintiff Strong"). This action proceeds on Plaintiffs' original complaint. See ECF No. 1. Plaintiffs name the following parties as defendants: (1) Butte County Department of Employment and Social Services ("DESS"); (2) Natasha Chronister, social worker for DESS ("Defendant Chronister"); (3) Natasha Labosky-Ford, social worker for DESS ("Defendant Labosky-Ford"); (4) Alicia Escobar, social worker for DESS ("Defendant Escobar"); (5) Jamie Panuke, social worker supervisor for DESS ("Defendant Panuke"); (6) T.J. Grundy, social worker supervisor for DESS ("Defendant Grundy"); (7) Jesse Lambert, social worker supervisor for DESS ("Defendant Lambert"); (8) Nanette Norton, program manager for DESS ("Defendant Norton"); and (9) Lindsay Stalnaker, police deputy for the Chico Police Department ("Defendant Stalnaker"). See id. at 1-2. Plaintiffs bring suit against all defendants both as individuals and in their official capacities. See id. Plaintiffs also list twenty-five unnamed defendants as parties, but do not refer to such defendants throughout the remainder of the complaint. See id. at 2.

The complaint concerns two minors, referred to throughout as E.C. and A.J. See id. at 8. Plaintiff Strang is the mother to both children. See id. Plaintiff Cash is the father to E.C. and Plaintiffs claim he was found to be the "presumed father" to A.J. See id. E.C. was born on September 7, 2022. See id. At that time, A.J. was approximately eighteen months old. See id. at 12.

While at the hospital for the birth of E.C., Plaintiff Strang admitted to medical staff that she had consumed methamphetamine two days prior. See id. at 8. Plaintiffs claim that the toxicology report for E.C. showed that she was presumed positive for methamphetamine and had amphetamine metabolites in her urine below the threshold for a confirmatory test. See id. at 9. On September 8, Plaintiff Strang and E.C. were set to be discharged from the hospital. See id. Plaintiffs allege that Defendant Chronister ordered the hospital to hold Plaintiff Strang and E.C. and detain them against Plaintiff Strang's will. See id.

///

///

Later that day, Plaintiff Cash was contacted to set up an in-home visit, which was scheduled for the following day. See id. at 10. On September 9, at 9:15 a.m., Plaintiffs claim that Defendants Chronister and Labosky-Ford observed the home and found that it had all necessary provision in expectation of the baby's arrival, apart from baby formula. See id. at 10-11. Defendants Chronister and Labosky-Ford informed Plaintiff Cash that E.C. could not be released into his care unless he submitted to a drug test and Defendant Chronister provided Plaintiff Cash with a slip of paper informing him that he could test between the hours of 9:00 a.m. and 12:00 p.m., or between 1:00 p.m. and 4:00 p.m. See id. at 11. Plaintiffs allege that these actions were taken under the supervision of Defendant Panuke. See id. Defendants Chronister and Labosky-Ford returned to Plaintiffs' home at 12:30 p.m. and informed him that he was required to sign a Voluntary Case Agreement in order for E.C. to be released into his care. See id. The Voluntary Case Agreement required, among other things, that Plaintiff Cash agree to drug tests as requested and that failure to appear for a drug test would be considered a positive. See id. Plaintiffs allege that Plaintiff Cash only agreed to the Voluntary Case Agreement under duress and that he was coerced into signing it by threats to deprive him of custody of E.C. See id.

Defendants Chronister and Labosky-Ford returned to Plaintiffs' home at 2:00 p.m., but Plaintiff Cash was dropping A.J. off with a babysitter and was not home when they arrived. See id. at 12. Defendants Chronister and Labosky-Ford then drove to the hospital, where Plaintiffs allege Plaintiff Strang and E.C. were still being detained. See id. Defendants Chronister and Labosky-Ford then contacted the Chico Police Department and Defendant Stalnaker arrived at 2:35 p.m. See id. at 13. Plaintiffs allege that Defendant Stalnaker received the toxicology report and was informed of Plaintiff Cash's failure to appear for drug testing as of 2:20 p.m., then detained E.C. in the absence of exigent circumstances and without performing an independent investigation. See id. Plaintiffs further allege that actions taken by Defendants Chronister and Labosky-Ford were under the supervision of Defendant Panuke.

///

///

///

On September 13, 2022, Defendants Chronister and Labosky-Ford filed a petition with the Butte County Superior Court. See id. at 14. This petition stated that Plaintiff Cash knew of Plaintiff Strang's drug use and did not dissuade her from that use and that both Plaintiffs have untreated substance abuse issues. See id. Plaintiffs claim that Plaintiff Cash had previously informed Defendants Chronister and Labosky-Ford that he was unaware of Plaintiff Strang's drug use prior to September 7. See id. at 10. Plaintiffs also claim that Plaintiff Cash had informed them that he had a history of drug use but had not used any drugs since 2001. See id. Plaintiffs allege that the defendants' statements were knowingly falsely made in order to kidnap E.C. See id. at 14. Plaintiffs further allege that these actions were taken under the supervision of Defendant Panuke. See id. at 14.

On September 13, Plaintiff Cash appeared for a detainment hearing and was assigned counsel for his case. See id. Plaintiff Cash claims he requested that counsel file a motion to dismiss, however counsel did not do so and the court ordered that Plaintiff Cash submit to a drug test. See id. Plaintiffs claim that the court lacked jurisdiction over the case and abused its discretion in issuing this order. See id. at 14-15. On October 12, Defendants Labosky-Ford and Escobar visited Plaintiffs' home and informed Plaintiff Strang that Plaintiff Cash had failed a drug test and inquired as to how Plaintiff Strang would keep A.J. safe from Plaintiff Cash. See id. at 15. Plaintiff Cash then left and moved out of the home. See id. Plaintiffs claim that the actions of Defendants Labosky-Ford and Escobar were under the supervision of Defendant Grudy. See id.

Plaintiffs next claim that on November 1, 2022, Defendant Labosky-Ford testified before the Butte County Superior Court that Plaintiff Strang had continued her methamphetamine use. See id. at 16. Plaintiffs claim that this testimony is contradicted by six tests submitted by Plaintiff Strang between September 13 and October 27 that were negative for any traces of illegal substances. See id. Plaintiffs further claim that Defendant Labosky-Ford testified that Plaintiffs had committed acts of domestic violence in front of A.J. See id. Plaintiffs claim that this was in reference to an incident in which Plaintiff Cash became upset and broke his phone but claim that A.J. was not present for this incident. See id. at 15. Plaintiffs allege that Defendant Labosky-Ford knowingly falsely made these statements in order to obtain protective custody over A.J. See id. at

16-17. Plaintiffs further allege that Defendant Labosky-Ford made these statements under the supervision of Defendant Grudy and that Defendant Grudy signed off on the protective custody warrant presented at trial, stating that Plaintiff Strang had continued her drug use. See id. at 16-17.

Plaintiffs claim that all employees were acting under the supervision of DESS and that the agency were aware of its employees making false statements to the court. See id. at 17. Plaintiffs allege that DESS did not take corrective actions to prevent false statements. See id. Plaintiffs further allege that Defendant Lambert became aware of the facts of the case in January 2023 and did not take any corrective action. See id. No specific actions are alleged by Defendant Norton.

## II. DISCUSSION

The Court finds that Plaintiffs' complaint suffers from two key defects. First, Plaintiffs have not presented facts sufficient to determine if the claim is barred by either the Rooker-Feldman or Younger abstention doctrines. Additionally, Plaintiffs have not presented facts sufficient to show a causal connection between the actions of several defendants and the alleged constitutional violations. Because the Court must as a threshold matter determine whether it has jurisdiction, the Court will address only the jurisdictional issue and defer consideration of the sufficiency of the facts to show a prima facie case of liability pending the filing of an amended pleading which is sufficient for the Court to determine jurisdiction.

Under the Rooker-Feldman abstention doctrine, federal courts lack jurisdiction to hear matters already decided in state court. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The doctrine applies in cases "brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005).

///

To the extent state court proceedings are ongoing, this action may be barred under the doctrine announced in Younger v. Harris, 401 U.S. 37 (1971).  Younger abstention is concerned with overlapping principles of equity, comity, and federalism and directs federal courts to abstain from granting injunctive or declaratory relief that would interfere with pending state or local court proceedings in certain situations. See Arevalo v. Hennessy, 882 F.3d 763, 765 (9th Cir. 2018); Gilbertson v. Albright, 381 F.3d 965, 973 (9th Cir. 2004). While Younger established that federal courts must refrain from enjoining or interfering with a parallel, pending criminal proceeding in state court, see Younger, 401 U.S. at 49-53, the doctrine has subsequently been extended to "particular state civil proceedings that are akin to criminal prosecutions . . . or that implicate a state's interest in enforcing the orders and judgments of its courts. . . ," See Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 70 (2013) (citations and quotations omitted). To warrant Younger abstention, a state civil action must fall into one of the above categories.

Claims under 42 U.S.C. § 1983 that turn on alleged violations of constitutional rights arising in the course of ongoing state court proceedings also implicate the same grounds for abstention. Gilbertson, 381 F.3d at 979-980. Therefore, in civil cases, Younger abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges. ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund, 754 F.3d 754, 759 (9th Cir. 2014).  Claims under 42 U.S.C. § 1983 that turn on alleged violations of constitutional rights arising in the course of ongoing state court proceedings also implicate the same grounds for abstention. Gilbertson, 381 F.3d at 979-980. Therefore, in civil cases, Younger abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges. ReadyLink, 754 F.3d at 759.

///

///

///

Moore v. Sims, 442 U.S. 415 (1979) is illustrative. In Moore, parents challenged the constitutionality of parts of the Texas Family Code that permitted removal of their children following allegations of child abuse. Id. at 418-20. Prior to the parents' action, the state had initiated proceedings alleging child abuse, leading to an investigation and subsequent custody hearings. See id. The Supreme Court ultimately determined that the Federal District Court should not have exercised jurisdiction in the matter and should have abstained under Younger. Id. at 423-35.

Given Plaintiffs' claims regarding custody proceedings in state court, it is possible this action is barred under either the Rooker-Feldman or Younger abstention doctrines.  Plaintiffs will be provided an opportunity to amend the complaint to set forth specific facts related to the state custody cases. For claims involving detention or custody of E.C. and A.J., Plaintiffs should include whether those cases have been concluded and, if so, to what result.  For claims involving misconduct by state officials, Plaintiffs should also include any facts related to efforts made in the context of the state court proceedings to raise the issues claimed in this action.

### III.  CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiffs are entitled to leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiffs are informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  Therefore, if Plaintiffs amend the complaint, the Court cannot refer to the prior pleading in order to make Plaintiffs' amended complaint complete.  See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading.  See id.

/ / /

/ / /

If Plaintiffs choose to amend the complaint, Plaintiffs must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiffs' constitutional or federal statutory rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, Plaintiffs are warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiffs are also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiffs' complaint is dismissed with leave to amend.
2. Plaintiffs shall file a first amended complaint within 30 days of the date of this order.

Dated: August 27, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE